CHARLES REISLER, III, et al., Appellants, v 60 GRAMERCY PARK NORTH CORP. et al., Respondents.

First Department, August 5, 1982

### APPEARANCES OF COUNSEL

*Gail A. Shields* of counsel (*Jerome M. Leitner* with her on the brief; *Jerome M. Leitner,* attorney), for appellants.

*Emily J. Spitzer* of counsel (*Thomas H. Sear* with her on the brief; *Spengler Carlson Gubar Brodsky & Rosenthal,* attorneys), for respondents.

### OPINION OF THE COURT

FEIN, J.

Plaintiff Reisler is a rent stabilized tenant of Apartment No. 4-C at premises 60 Gramercy Park North, Manhattan,

under a lease renewed from November 1, 1980 to October 31, 1982. Plaintiff Steinberg occupied Apartment No. 4-D. Defendants are the owners and managing agents of the premises. Steinberg, because he was given custody of his two children after his divorce, sought a larger apartment. Reisler wished to vacate his apartment upon purchasing a new home. According to plaintiffs, in the spring and summer of 1980 and the early spring of 1981 in conversations between plaintiffs and employees of A. J. Clarke Management Corp. (Clarke) it was agreed that upon Reisler's vacating his apartment, Steinberg would be given possession and allowed to combine it with his own apartment. However, no documents to effectuate this turnover were forthcoming from defendants despite promises to that effect.

On March 6, 1981 Reisler wrote a letter to Richard Bendix of Clarke, as follows:

"Dear Mr. Bendix:

"This is to advise you that I am now planning to close on the purchase of a home on April 1, 1981. When this has been completed, I would plan on terminating my lease on April 31 [*sic*], 1981. I will notify you officially of this upon closing.

"As it is my understanding that your office and Mr. Steven Steinberg of this address have reached an agreement for him to assume my lease, this letter will hopefully serve to allow you advance notice to draw up the necessary papers as required.

"Again, final notification of my intention to vacate my apartment will hopefully be forwarded by April 1. I trust you will appreciate my reluctance to do so prior to the official closing.

"Sincerely,

"Charles J. Reisler III

"cc: S. Steinberg"

There was no response.

On April 6, 1981 Reisler forwarded another letter to Clarke, as follows:

"Dear Mr. Clarke:

"This will confirm my plans to vacate apartment 4-C, 60 Gramercy Park North, New York City on Friday May 1. You will recall that I had previously indicated to you the probability of this action.

"It is my understanding that Mr. Steven Steinberg, also of 60 Gramercy Park North, will be taking over the apartment per a previous agreement with Clarke Management.

"Please advise me when I can expect to receive my security deposit. Should you have further questions or comments, do not hesitate to call me.

"Sincerely,

"Charles J. Reisler

"cc: Steven Steinberg

Richard Bendix"

According to plaintiffs, representatives of Clarke reaffirmed to Steinberg and Reisler their intention of giving Steinberg the apartment. A number of excuses were given for the delay in forwarding legal documents.

On April 21 Reisler sent a mailgram to Clarke stating, in pertinent part: "Be advised not move 5-1-81. Will honor existing lease through November 1983. Will renew at that time."

On May 14, 1981 Reisler and Steinberg entered into a sublease in writing wherein Reisler subleased the apartment to Steinberg. The sublease was forwarded to Clarke on May 20, 1981 for consent pursuant to the lease provision requiring landlord's written consent and in compliance with section 226-b of the Real Property Law. Accompanying the letter requesting formal consent to the sublease was Steinberg's 1980 personal and partnership tax returns.

On May 25, 1981 Clarke responded with a general refusal to sublet without giving any reason therefor, as follows:

"Your application to sublet your apartment to Steven Steinberg is hereby denied. If you wish, you may be relieved of all responsibility for the balance of your lease in exchange for possession of the apartment.

"Please advise at your first convenience."

Defendants continued to collect rent from Reisler as they had during the entire period of the negotiations. Defendants made no attempt to obtain Reisler's keys or to change the locks, and entered into no further correspondence with Reisler until June 15, 1981 when Clarke wrote denying the application for sublet as follows:

"1. If this sublet were allowed, the sub-tenant would be in occupancy of two rent stabilized apartments in the same building. This would be in violation of the intent and letter of the Rent Stabilization laws.

"2. In reliance on your notice to vacate the apartment, a tenant was obtained to rent this apartment. A lease was drawn and a check made out covering the first month's rent and security.

"3. The prospective tenant for your apartment has a legitimate and serious medical reason necessitating his living in this area. This person relied on your statement of intention of leaving and accordingly, has made plans to take over this apartment.

"4. Even if the serious considerations stated above did not exist, the information forwarded to me would not be sufficient to determine whether Mr. Steinberg would be a suitable sub-tenant. Specifically, I would need detailed information concerning his partnerships, business references, personal references as well as his statement concerning his other financial obligations so that a determination could be made concerning his financial ability to support this apartment as well as his other one in the building."

In the light of that letter plaintiffs instituted this action to enjoin the landlord from leasing or attempting to lease the apartment, and sought a declaratory judgment establishing Reisler's right to sublet to Steinberg. Defendants cross-moved for summary judgment.

Special Term denied plaintiffs' motion for a preliminary injunction and granted defendants' cross motion for summary judgment.

Special Term founded its determination upon the fact that the written request for permission to sublease was dated May 20, 1981, and that timely written objection was made within 30 days of notice of such intention, relying on defendants' June 15, 1981 letter. Special Term made no determination that the stated grounds of rejection were reasonable. It concluded that "the fact that the proposed sublease was desired by Steinberg for the purpose of structurally joining apartments 4C and 4D, standing alone, constituted a reasonable basis for defendants' refusal to agree to the proposed sublease." No such reason was advanced in Clarke's letter refusing to consent to the sublease. It is plain that Steinberg's proposal for such structural alterations had been the subject of discussion and negotiations between the parties. However, the sublease is not conditioned thereon, nor did the request for consent relate thereto.

Plaintiffs contend that by reason of the promises made to them Steinberg is entitled to the apartment either by sublease from Reisler or by a modification of Reisler's lease to extend the tenancy to Steinberg. Defendants respond that even if the promises were made in the form alleged, they were not in writing and plaintiffs cannot rely thereon because of the Statute of Frauds requiring a writing to lease real property (General Obligations Law, § 5-703) or to modify either Steinberg's lease or Reisler's lease (General Obligations Law, § 15-301, subd 1).

■ Plaintiffs assert that there has been "part performance" sufficient to take the case out of the statute and that defendants should be barred by equitable estoppel from pleading the statute because plaintiffs relied upon the conduct of defendants to their detriment. In order to take an oral agreement out of the Statute of Frauds, there must be evidence of such part performance as is "unequivocally referable" to the oral agreement so that no meaning can be given to such performance other than the existence of such agreement (*Burns v McCormick,* 233 NY 230; *Rose v Spa Realty Assoc.,* 42 NY2d 338, 343-344). Plaintiffs rely upon

the letters of March 6 and April 6 as indicative of such part performance unequivocally referable to the oral promises that Steinberg would be allowed to "assume" Reisler's lease. However, these letters are not unequivocally referable to any oral promises. Although they indicate Reisler's intention to surrender the apartment concomitant with an arrangement for Steinberg to take it over, they indicate no change of position, no performance in whole or in part. For the same reason there is no equitable estoppel. The conduct relied upon to plaintiffs' detriment must be such as is "not otherwise * * * compatible with the agreement as written" (*Rose v Spa Realty Assoc.*, 42 NY2d, at p 344). There is no conduct on defendants' part in allowing Reisler and Steinberg to continue with the occupancy of their respective apartment that is incompatible with their respective leases in full force and effect.

Moreover, even if it be assumed there was an oral promise to modify the respective leases so as to give Steinberg the right to occupy Reisler's apartment, no terms and conditions of the modification are shown to have been agreed upon. Hence at best for the plaintiffs there was an agreement to agree, unenforceable because the terms are not set forth (*Martin Delicatessen v Schumacher*, 52 NY2d 105, 109-110).

However, this is not dispositive. There are triable issues as to whether there was a valid sublease from Reisler to Steinberg and whether defendants' refusal to consent was timely and reasonable.

■ Special Term held and defendants argue that Steinberg was not entitled either to a lease or sublease of the apartment because Reisler had surrendered it, terminating his right to sublet. At best for defendants there is a triable issue as to whether there was a surrender. A tenant who remains in possession of the leased premises until the expiration of his term retains the rights and duties of a tenant and is liable for the rent unless and until the landlord explicitly or implicitly acquiesces in the tenant's surrender (*Centurian Dev. v Kenford Co.*, 60 AD2d 96, app dsmd 45 NY2d 772). Defendants urge that the letters of March 6 and April 6 constituted a surrender. However, those letters plainly are premised upon an alleged ar-

rangement with defendants for Steinberg to take the apartment over as orally promised. Although the alleged oral promises may not be sufficient to satisfy the Statute of Frauds so as to create either a new lease or a modification of the old lease, they plainly provide ample evidence that there was no surrender. Moreover, on May 20, 1981, when Reisler made the formal written application to the landlord for consent to sublet to Steinberg, the landlord's uncontroverted response, dated May 25, 1981, explicitly acknowledged that Reisler was the lessee of the apartment in possession and responsible for the rent. The later letter of June 15 setting forth the landlord's reasons for refusing consent is a further demonstration that there was no surrender. Moreover, the landlord accepted the rent for the pertinent months. Surrender does not occur unless there is an unequivocal act of the tenant, accepted by the landlord (*Centurian Dev. v Kenford Co., supra; Gadek Inc. v F.W.B. Corp.*, 26 AD2d 807). The landlord's alleged lease of the premises to another is not dispositive on the issue of surrender in the absence of notification from the defendants that they were entering the premises and reletting them either for their own or Reisler's benefit (*Centurian Dev. v Kenford Co., supra*).

Subdivision 2 of section 226-b of the Real Property Law requires written denial of an application for consent to sublease within 30 days of the request. Although on this record it appears that, during the year, defendants had promised Reisler the right to sublease to Steinberg, Reisler did not make a formal written request for approval of the sublease until May 20, 1981. Plaintiffs contend that the letters of March 6 and April 6 constituted a request for permission to sublease and that defendants' letter of May 25 denying the application was untimely because not made within 30 days as required by section 226-b of the Real Property Law. Moreover, they argue that letter gave no reason for denying the right to sublet, hence it constituted an acceptance of the sublease (*Conrad v Third Sutton Realty Co.*, 81 AD2d 50, mot for lv to app den 55 NY2d 601). By virtue of that letter the sublease was approved. However, defendants rely upon their subsequent letter of June 15, setting forth the reasons, noting that it was sent

within 30 days of plaintiffs' formal request for approval of the sublease.

There are triable issues as to (1) when the request for approval was made, (2) whether the letter of May 25 was untimely, and (3) whether the letter of June 15 was timely. There is also a triable issue whether the reasons given in the June 15 letter, even if·timely, are reasonable. The first reason, that such a sublease would violate the Rent Stabilization Law, is questionable. There is nothing in the Rent Stabilization Law which prohibits the enlargement of two rent stabilized apartments into one. This is not a case where the tenant actually lives elsewhere and seeks to utilize the rent stabilized apartment for profit. The second and third reasons, that the landlord rented the apartment to another whose health required such an apartment, presents a triable issue as to whether it was reasonable to rent the apartment, if the landlord actually did so, in the light of the negotiations with plaintiffs.

The final reason, respecting the financial circumstances of Steinberg, also, at best for the landlord, presents a triable issue. The landlord is entitled to information concerning the financial condition of the proposed sublessee. However, this was furnished in the form of Steinberg's tax returns. If additional information was sought, it should have been requested. In the absence of such request the lack of such information is not a ground for objecting to the sublease (*Conrad v Third Sutton Realty Co., supra*). The issue of whether the landlord's consent was unreasonably withheld presents a triable issue.

In the face of the negotiations between the parties, which are undenied on this record, there are triable issues as to whether there was a surrender of the apartment, whether the landlord's refusal to approve the sublease was timely, and if so, whether it was reasonable. It is plain that section 226-b of the Real Property Law does not permit the landlord to impose conditions which are unreasonable. The issue is for trial.

Accordingly, the judgment of the Supreme Court, New York County (RICCOBONO, J.), entered January 12, 1982 denying plaintiffs' motion for a preliminary injunction and

granting defendants' cross motion for summary judgment should be reversed, on the law and the facts, the judgment vacated, defendants' cross motion for summary judgment denied, with costs, and plaintiffs' motion for a preliminary injunction should be granted enjoining and restraining defendants from executing and delivering a lease to Apartment No. 4-C, 60 Gramercy Park North, Manhattan, to anyone other than plaintiffs pending the final determination of this action, subject to the payment by plaintiffs of the rent reserved in the lease between defendants and plaintiff Reisler.

SANDLER, J. P., SULLIVAN, MARKEWICH and MILONAS, JJ., concur.

Judgment, Supreme Court, New York County, entered on January 12, 1982, unanimously reversed, on the law and the facts, the judgment vacated, defendants' cross motion for summary judgment denied, and plaintiffs' motion for a preliminary injunction granted enjoining and restraining defendants from executing and delivering a lease to Apartment No. 4-C, 60 Gramercy Park North, Manhattan, to anyone other than plaintiffs pending the final determination of this action, subject to the payment by plaintiffs of the rent reserved in the lease between defendants and plaintiff Reisler. Appellants shall recover of respondents $75 costs and disbursements of this appeal.