**MESSNER VETERE BERGER McNA-MEE SCMETTERER EURO RSCG INC., Plaintiff,**

v.

**AEGIS GROUP PLC, Defendant.**

No. 96 Civ. 3596(MGC).

United States District Court, S.D. New York.

Aug. 1, 1997.

Frauds and pursuant to Fed.R.Civ.P. 19 for failing to join an indispensable party. For the reasons that follow, the motion is granted.

### Allegations of the Complaint

The amended complaint (hereinafter simply the "complaint") provides a detailed account of the complex history between the parties. In the interest of clarity, the relevant allegations of the complaint are summarized below, without incorporating some of the corporate transformations which are not germane to this motion.

In 1979, Creamer Inc., an advertising agency, entered into a written lease agreement with MRI Broadway Rental, Inc. ("Landlord") pursuant to which Creamer rented the 27th floor and part of the 26th floor of the office building at 1633 Broadway in New York City. The lease runs from September 1, 1979 to August 31, 1999 at an annual rent of $775,450.00. After entering the lease, Creamer occupied the 27th floor and its subsidiary, CDB Inc., occupied the 26th floor. (Am.Compl.¶ 10).

In July of 1986, Aegis purchased all the outstanding stock of Creamer. (*Id.* ¶ 7). In September of 1986, Aegis purchased all the outstanding stock of another advertising agency named Della Femina, Travisano & Partners, Inc. ("Della Femina"). In February of 1987, Creamer entered into a written sublease with an unrelated third party for all the leased space of the 26th floor through the end of the lease. The sublease was approved by the Landlord. (*Id.* ¶ 10). Later in 1987, Aegis moved essentially all of Creamer's advertising operations and personnel out of the 27th floor of 1633 Broadway and into the New York offices of Della Femina. The few administrative employees who were left at 1633 Broadway became employees of WCRS, Inc., Aegis's holding company for its non-advertising subsidiaries. Aegis and WCRS, Inc. occupied space on the 27th floor, along with CDB Inc., a non-advertising subsidiary that Aegis had removed from Creamer. It is at that time in late 1987, according to the complaint, that Aegis "assumed full responsibility for payment of the rent on the Leased Space." (*Id.* ¶ 11).

Winston & Strawn by Daniel R. Murdock, New York City, for Plaintiff.

Bressler, Amery & Ross, P.C. by David H. Pikus, New York City, for Defendant.

### OPINION

CEDARBAUM, District Judge.

Plaintiff Messner Vetere Berger McNamee Schmetterer EURO RSCG Inc. ("Messner Vetere") alleges that defendant Aegis Group PLC orally agreed to assume the obligations under a lease which was entered into by a predecessor-in-interest of Messner Vetere. Messner Vetere seeks a declaratory judgment that Aegis assumed all the obligations under the lease as well as damages for breach of contract.

Aegis moves to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) on the ground that the claim is barred by New York's Statute of

In March of 1988, Aegis sold to Eurocom S.A. approximately 20% of the outstanding stock of WCRS Advertising Ltd., the holding company for Aegis's advertising subsidiaries which included Creamer. The use and occupancy of 1633 Broadway was not involved in this sale because Aegis controlled the leased space in 1633 Broadway through its non-advertising subsidiaries. Therefore, although Creamer technically remained the tenant named in the lease, Aegis had the holding company of its non-advertising companies, WCRS, Inc., "assume direct responsibility for all obligations under the Lease" and "hold Creamer ... and any successor-in-interest, harmless from any further financial exposure on the Lease." (*Id.* ¶ 12).

In October of 1989, Eurocom S.A. increased its share of WCRS Advertising Ltd. to 60%, and thereby gained control of Aegis's United States advertising subsidiaries, including Creamer. (*Id.* ¶ 13). On September 14, 1990, Aegis sold all of the outstanding shares of CDB Inc. to Eurocom S.A. With regard to the space CDB Inc. occupied at 1633 Broadway, the stock purchase agreement stated that:

CDB subleases, 19,675 square feet of office space at 1633 Broadway, New York, New York at a monthly rental of $44,184. There is no formal sublease with respect to these premises. The lessee under the lease is Creamer, Inc. (now DFM). The lease prohibits assignment without consent except under certain circumstances including assignment to a company under common control with lessee. As DFM and CDB are not at present under common control, the sublease to CDB is not permitted under the terms of the lease. CDB owes Aegis Group PLC $161,957.06 with respect to the renovation of the 27th floor. CDB is to pay $40,000 per month with payment in full [on] December 31, 1990.

(*Id.* ¶ 14).

In negotiating the sale of CDB Inc., Aegis's chief financial officer insisted that Eurocom S.A. commit to having CDB Inc. remain a subtenant at 1633 Broadway through the end of the lease. In return, Aegis agreed to share the proceeds from the space which CDB Inc. occupied in the event that it was marketed. In light of this agreement, Eurocom included the following commitments in the stock purchase agreement:

(i) Buyer will cause CDB to continue to pay its proportionate share of the rent payable for the space occupied on the 27th floor of 1633 Broadway during the remaining term of the lease;

(ii) Buyer will pay one-half the cost of any agreed partitioning for such space; and

(iii) In the event that an agreement is reached to market such space, Buyer will pay one-half of any costs involved and will receive one-half of any proceeds achieved in connection therewith.

(*Id.*) After Eurocom S.A. purchased CDB Inc., CDB Inc. paid rent for the space it occupies at 1633 Broadway to Aegis.

On December 3, 1992, Mark Silver, a group comptroller with Aegis, sent a memorandum to Bob Clark, the administrator of the lease for Aegis at the time. In the memorandum, which is on Aegis letterhead and attached to the complaint, Silver stated that:

We are currently preparing a list of our property liabilities around the Group. I believe that our only property in the U.S. is now Broadway and I would be grateful if you would send me a chapter and verse and the current amount of space occupied by each company/business on two floors. I believe the lease is still in the name of HBM Creamer but could you please confirm.

(*Id.* ¶ 17). The memorandum further confirmed that Aegis had sold a subsidiary, API Sponsorship Ltd. ("API"), which was also a subtenant at 1633 Broadway. Under that agreement, the purchaser of API agreed to continue API's occupancy of the leased space until December 31, 1994. (*Id.* ¶ 17).

From the time Aegis allegedly assumed the lease in 1987 to May 1, 1995, Aegis negotiated sublease agreements with third parties, collected sublease payments from third parties and its own subsidiaries, made all payments due to the Landlord, regularly filed commercial rent tax returns, and paid commercial rent tax to the City of New York. Such actions were taken without providing

notice to or consulting with Creamer or its successors. (*Id.* ¶ 15). Aegis continued to fulfill the obligations under the lease until May 1, 1995, even though in June of 1992, Aegis transferred its remaining interest in WCRS Advertising Ltd. to Eurocom S.A., thereby relinquishing all of its financial interest in Creamer. (*Id.* ¶ 16).

In February of 1994, Plaintiff Messner Vetere was merged into Della Femina, which had previously merged with Creamer in November of 1989. Messner Vetere thereby became the successor-in-interest to Creamer, the tenant named in the written lease. (*Id.* ¶ 6). By letter to Messner Vetere dated March 9, 1995, Aegis recognized that it had been fulfilling certain obligations under the lease and "would terminate all involvement with respect to the Lease as of April 30, 1995." (*Id.* ¶ 19).

### Discussion

 Aegis moves to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) on the ground that Messner Vetere's claims are barred by the Statute of Frauds. In appropriate circumstances, affirmative defenses may be raised in a Rule 12(b)(6) motion to dismiss. *Day v.. Moscow,* 955 F.2d 807, 811 (2d Cir.1992) (res judicata); *Green v.. Maraio,* 722 F.2d 1013, 1018–19 (2d Cir.1983) (qualified immunity). A motion to dismiss may be granted if, drawing all reasonable inferences from the complaint in favor of plaintiff, defendant has a valid Statute of Frauds defense to plaintiff's claims. *See Levitin v. Griffin,* No. 93 Civ. 4133(MGC), 1993 WL 497974 (S.D.N.Y. Nov.30, 1993), *aff'd,* 33 F.3d 49 (2d Cir.1994); *O'Hearn v. Spence–Chapin Services to Families and Children, Inc.,* 929 F.Supp. 136, 138 (S.D.N.Y.1996).

 Under New York's Statute of Frauds, an interest in real property cannot be created or transferred except by a writing ex-

pressing the consideration, signed by the party against whom enforcement is sought. *See e.g., C&K Realty Co. v. ISFC Fabrics Corp.,* 66 A.D.2d 697, 411 N.Y.S.2d 257 (App. Div. 1st Dep't 1978). The section of New York's Statute of Frauds dealing with conveyances and contracts concerning real property, N.Y.Gen. Obligations Law § 5–703, provides in relevant part that:

1. An estate or interest in real property, other than a lease for a term not exceeding one year, or any trust or power, over or concerning real property, or in any manner relating thereto, cannot be created, granted, assigned, surrendered or declared ... unless by a deed or conveyance in writing, subscribed by the person creating, granting, assigning, surrendering or declaring the same, or by his lawful agent, thereunto authorized by writing....

2. A contract for the leasing for a longer period than one year, or for the sale of any real property, or an interest therein, is void unless the contract or some note or memorandum thereof, expressing the consideration, is in writing, subscribed by the party to be charged, or by his lawful agent thereunto authorized by writing.

Messner Vetere concedes that there is no written agreement complying with the Statute of Frauds. (Pl.'s Mem. in Opp'n to Motion at 10). Messner Vetere also concedes that its predecessor-in-interest, Creamer, is the tenant in the written lease. (Am.Compl. ¶ 10). However, Messner Vetere argues that the oral agreement by which Aegis assumed the obligations of the written lease is nonetheless enforceable because it falls under the part performance exception to the Statute of Frauds.[1]

 The section of the Statute of Frauds dealing with real property contains a statutory part performance exception. Section 5–703(4) provides that "[n]othing in this section

---

1. Messner Vetere also argued initially that the Statute of Frauds did not apply at all because the "the law presumes that the lease was assigned to the occupier of the premises." (Pl.'s Mem. in Opp'n to Motion at 8) (quoting *Relide Realty Co. v. Bernard Lang & Co.,* 182 A.D.2d 442, 581 N.Y.S.2d 350 (1992)). However, Messner Vetere appears to have backed away from this argument. (Pl.'s letter dated December 6, 1996 at 2)

("Plaintiff has relied from the outset upon the partial performance exception."). In any event, the complaint does not allege that Aegis has been in possession of the property since 1992, nor does it allege that prior to 1992, Aegis was in exclusive possession of the property. In fact, the complaint alleges that a significant portion of the leased space is now occupied by Messner Vetere's own affiliate, CDB Inc. (Am.Compl. ¶ 14).

abridges the powers of courts of equity to compel the specific performance of agreements in cases of part performance." N.Y.Gen. Obligations Law § 5–703(4). Accordingly, under certain circumstances, specific performance of an unwritten agreement can be compelled when there has been sufficient part performance which is unequivocally referable to the agreement. *See McKinley v. Hessen,* 202 N.Y. 24, 29–30, 95 N.E. 32, 33–34 (1911); *Tuttle, Pendelton & Gelston, Inc. v. Dronart Realty Corp.,* 90 A.D.2d 830, 455 N.Y.S.2d 830 (1982); *Fiske v. Fiske,* 95 A.D.2d 929, 464 N.Y.S.2d 282 (1983).

In order to satisfy the part performance exception to the Statute of Frauds, the performance needs to be "unequivocally referable" to the alleged oral agreement. *See Korff v. Pica Graphics, Inc.,* 121 A.D.2d 511, 504 N.Y.S.2d 17 (1986); *Pallette Stone Corp. v. Mangino,* 217 A.D.2d 738, 629 N.Y.S.2d 103 (1995). For performance to be unequivocally referable to the agreement, there must be no explanation for the parties' conduct other than performance of the alleged agreement. *See Burns v. McCormick,* 233 N.Y. 230, 232, 135 N.E. 273, 273 (1922) ("What is done must itself supply the key to what is promised. It is not enough that what is promised may give significance to what is done."); *Onorato v. Lupoli,* 135 A.D.2d 693, 522 N.Y.S.2d 593 (1987) (paying mortgage and taxes, making improvements, and occupying premises did not "unequivocally" refer to oral conveyance of property because other explanation was possible). "In order to take an oral agreement out of the Statute of Frauds, there must be evidence of such part performance as is 'unequivocally referable' to the oral agreement so that no meaning can be given to such performance other than the existence of such agreement." *Reisler v. 60 Gramercy Park North Corp.,* 88 A.D.2d 312, 316, 453 N.Y.S.2d 186, 189 (1982) (citing *Burns v. McCormick,* 233 N.Y. 230, 135 N.E. 273).

The complaint alleges that from 1987 to March of 1995, Aegis performed the oral agreement. Specifically, the complaint alleges that Aegis renovated the 27th floor, charged its tenants for a share of the costs, sublet various portions of the leased space,

and filed tax returns covering the leased space. (Am.Compl.¶ 15). These actions, Messner Vetere contends, constitute performance which is unequivocally referable to the oral agreement. The complaint does not provide a clear and precise statement of the terms of the alleged oral agreement. It merely alleges that "Aegis assumed all obligations under the Lease and agreed to hold Plaintiff and its predecessors harmless from any responsibility thereunder." (Am. Compl.¶ 22).

The conduct of Aegis alleged in the complaint does not unequivocally refer to such a general and complete assumption of obligations under the lease. Considering the fact that Aegis owned Creamer, the tenant named in the written lease, from July of 1986 to June of 1992, and at different times owned subtenants of the leased property, performance of the tenant's obligations under the lease is not clearly and unequivocally referable to the oral agreement. Aegis's alleged performance before June of 1992 can be explained by Aegis's financial interest in Creamer. Furthermore, any performance alleged in the complaint after 1992 is consistent with Aegis' contention that due to the frequent and complicated corporate transformations, Aegis had mistakenly continued to perform Creamer's obligations under the lease. (Def.'s Reply Mem. at 5–6). Aegis's letter of March 9, 1995 by which it terminated any further performance of obligations under the lease is also consistent with mistaken performance. Mistake is as likely an explanation for the conduct of Aegis alleged in the complaint as is the existence of an oral agreement to assume all the obligations of the lease. Without conduct that is unequivocally referable to the agreement, the part performance exception cannot save the alleged oral agreement from the requirements of the Statute of Frauds.

■ In addition, Messner Vetere's invocation of the part performance exception distorts its purpose. The part performance exception to the Statute of Frauds, closely related in origin and nature to equitable estoppel, *see Reisler v. 60 Gramercy Park North Corp.,* 88 A.D.2d 312, 316–17, 453 N.Y.S.2d 186, 189–90; *Bon Temps Agency,*

*Ltd. v. Towers Org., Inc.*, 187 A.D.2d 376, 590 N.Y.S.2d 97 (1992), is meant to prevent fraud. *McKinley v. Hessen*, 202 N.Y. at 29–30, 95 N.E. at 34 ("The intervention of equity is asked to prevent the commission of fraud."). In accordance with this purpose, the exception generally provides equitable relief for a party that performed an oral agreement, not a party that merely benefited from the other party's performance.

> [W]hen a parol agreement for the conveyance of real estate, void by the Statute of Frauds, has been proved and part performance has been shown by *acts of the party seeking relief,* which could have been done with no other design than that of performance, if an adequate action at law is not an adequate remedy, the agreement will be specifically enforced.

*Id.*, 202 N.Y. at 30, 95 N.E. at 34 (emphasis added).

There are no allegations in the complaint that Messner Vetere performed any obligations under the alleged agreement with Aegis. In fact, the complaint does not allege that Messner Vetere had any obligations under the agreement. The complaint alleges only that Aegis benefited from the agreement by exercising control of the leased space including the authority to sublet it, (Am.Compl.¶ 12), and that during the period Aegis allegedly performed the obligations of the tenant, Messner Vetere "took no action with respect to the Lease, including with respect to subleasing." (Am.Compl.¶ 16). Thus there is no allegation that Messner Vetere performed or had any obligations under the agreement, or that Messner Vetere relied to its detriment on the alleged oral agreement. Imposing the oral agreement on Aegis on the basis of its own part performance and in the absence of any performance by Messner Vetere is not consistent with the purpose of the part performance exception to the Statute of Frauds.

■ In addition, Messner Vetere's second claim for relief in which it seeks damages for breach of contract falls outside the statutory part performance exception of § 5–703(4) be-cause it is not an equitable claim. Section 5–703(4) empowers "courts of equity to compel the specific performance of agreements," but makes no provision for an award of money damages. *See Mauala v. Milford Management Corp.*, 559 F.Supp. 1000, 1003–04 (S.D.N.Y.1983). Therefore, the statutory part performance exception of § 5–703(4) cannot rescue Messner Vetere's claim for damages from the Statute of Frauds.

■ Messner Vetere argues that § 5–701 of the Statute of Frauds applies, not § 5–703.[2] Section 5–701(a) of N.Y.Gen. Obligations Law provides in relevant part that:

> Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking: (1) [b]y its terms is not to be performed within one year from the making thereof ... (2) [i]s a special promise to answer for the debt, default or miscarriage of another person.

Although § 5–701 does not contain an express part performance exception, the New York courts have developed a part performance exception to § 5–701's writing requirement. *See Anostario v. Vicinanzo*, 59 N.Y.2d 662, 664, 463 N.Y.S.2d 409, 410, 450 N.E.2d 215, 216 (1983). The part performance exception to § 5–701 also requires that the performance be "unequivocally referable" to the oral agreement and applies where the party seeking to enforce the agreement performed the contract. *See Songbird Jet Ltd., Inc. v. Amax Inc.*, 581 F.Supp. 912, 923 (S.D.N.Y.1984) ("When part performance is relied upon to excuse the failure to produce a signed writing, the actions of the party invoking the doctrine, standing alone, must be unintelligible or at least extraordinary[,] and unequivocally referable to the alleged oral agreement." (internal quotations omitted)); *Royal Air Maroc v. Servair, Inc.*, 603 F.Supp. 836, 841–42 (S.D.N.Y.1985). Therefore, regardless of whether § 5–703 or § 5–

---

**2.** Although Messner Vetere initially responded to Aegis's motion by invoking the statutory part performance exception of § 5–703(4), (Pl.'s Mem. at 10–15), it later shifted gears and argued that the action is governed by § 5–701, (Pl.'s Supp. Mem. at 15–21).

701 applies, Messner Vetere's claims are barred by New York's Statute of Frauds.

In support of its part performance argument, Messner Vetere relies on cases of significant performance by the party seeking to enforce the agreement, *see e.g. Dietze v. Patterson,* No. 84 Civ. 5682(MBM), 1989 WL 31483, *3 (S.D.N.Y. March 30, 1989) ("[T]he party seeking to enforce the contract, must show detrimental reliance through part performance"); *Lamprecht v. Comte,* No. 93 Civ. 7928(LMM), 1994 WL 260867 * 4 (S.D.N.Y. June 7, 1994), and conduct that could only be explained as performance of the oral agreement, *see e.g. Dietze,* 1989 WL 31483 at *2 (action consistent "only with" performance of agreement); *Lamprecht,* 1994 WL 260867 at *4 ("uncontroverted and otherwise unexplained part performance"). Moreover, the cases cited by Messner Vetere recognize that the part performance exception originated from judicial concern that failure to enforce such oral agreements would result in fraud. *See e.g. Royal Air Maroc,* 603 F.Supp. at 841. Unlike the cases cited by Messner Vetere, in this complaint, there is no allegation of performance by the party seeking to enforce the agreement, the conduct of Aegis alleged in the complaint is not unequivocally referable to the oral agreement, and nonenforcement of the alleged oral agreement will not result in fraud.

### Conclusion

For the foregoing reasons, Aegis's motion to dismiss the complaint is granted.[3]

SO ORDERED.

---

**3.** It is not necessary to reach Aegis's argument that the action should be dismissed for failure to join an indispensable party.