MESSNER VETERE BERGER McNA-
MEE SCHMETTERER EURO RSCG
INC., Plaintiff–Appellant,

v.

AEGIS GROUP PLC, Defendant–
Appellee.

Docket No. 97–9091.

United States Court of Appeals,
Second Circuit.

Argued May 26, 1998.

Decided July 17, 1998.

Daniel R. Murdock (Alan B. Howard and Jeremy F. Manning, of counsel), Winston & Strawn, New York City, for Plaintiff–Appellant.

David H. Pikus, Bressler, Amery & Ross, New York City, for Defendant–Appellee.

Before CALABRESI, Circuit Judge, and POLLACK * and DRONEY,** District Judges.***

CALABRESI, Circuit Judge:

Plaintiff Messner Vetere Berger McNamee Schmetterer Euro RSCG Inc. ("Messner Vetere"), appeals from a judgment of the United States District Court for the Southern District of New York (Miriam Goldman Cedarbaum, *Judge*), dismissing its claims against Aegis Group Plc ("Aegis") for breach of an alleged oral agreement to assign a written commercial lease (the "Lease") on the ground that Messner Vetere failed to state a claim that would invoke the "part performance" exception to New York's Statute of Frauds, N.Y. Gen. Oblig. Law §§ 5–701, 703. *See Messner Vetere Berger McNa-* *mee Schmetterer EURO RSCG Inc. v. Aegis Group PLC*, 974 F.Supp. 270 (S.D.N.Y.1997). On consideration of the briefs, appendix, record, and oral argument in this appeal, we have concluded that we should certify the following questions: (1) whether Messner Vetere adequately alleged its own part performance of an oral agreement to assign the Lease to Aegis when it stated in the complaint that it "took no action" with respect to its obligations under the lease agreement; and (2) whether an allegation that the defendant (but not the plaintiff) partly performed an oral agreement is sufficient at the pleading stage to avoid dismissal pursuant to the Statute of Frauds.

## Reasons for Certification

■ The certified issues in this case concern the proper interpretation and application of New York's part performance exception to the Statute of Frauds. Under New York law, an oral agreement is void if "[b]y its terms [it] is not to be performed within one year," or if it "[i]s a special promise to answer for the debt ... of another person." N.Y. Gen. Oblig. Law § 5–701. In accordance with this rule, contracts for the lease of real property for a period of more than one year are void unless reduced to writing. *See* N.Y. Gen. Oblig. Law § 5–703. The statutory bar may be overcome, however, if the plaintiff can prove part performance sufficient both to evidence the existence of, and to obligate the other party to, an otherwise unlawful oral agreement. *See* N.Y. Gen. Oblig. Law § 5–703(4); *Anostario v. Vici-nanzo*, 59 N.Y.2d 662, 664, 463 N.Y.S.2d 409, 450 N.E.2d 215, 216 (1983).[1]

---

\* The Honorable Milton Pollack, District Judge of the United States District Court for the Southern District of New York, sitting by designation.

\*\* The Honorable Christopher F. Droney, District Judge of the United States District Court for the District of Connecticut, sitting by designation.

\*\*\* Pursuant to 28 U.S.C. § 46(b) and an order of the chief judge of this court certifying a judicial emergency, this case was heard by an emergency panel consisting of one judge of this court and two judges of the United States District Court sitting by designation.

1. Although Messner Vetere concedes that the Statute of Frauds is applicable to the supposed oral agreement at issue here, there is some ques-tion whether § 5–703 or the "special promise to answer for the debt ... of another person" provision of § 5–701(2) is the controlling provision of that statute. While § 5–703 contains an express statutory part performance exception, *see* N.Y. Gen. Oblig. Law § 5–703(4) ("Nothing in this section abridges the powers of courts of equity to compel the specific performance of agreements in cases of part performance."), § 5–701 does not. Nevertheless, for purposes of this appeal, it seemingly makes no difference which section governs because the New York Court of Appeals has recognized a parallel, judicially-created part performance exception to § 5–701. *See Anostar-*

The classic statement of the part performance doctrine by the New York Court of Appeals is that:

> It would be quite antagonistic to the spirit of a statute designed to prevent fraud, if it might be availed of to cover fraud. Therefore, it has been long the settled rule, in England, as here, that when a parol agreement for the conveyance of real estate, void by the statute of frauds, has been proved and part performance has been shown by acts of the party seeking relief, which could have been done with no other design than that of performance, if an action at law is not an adequate remedy, the agreement will be specifically enforced.

*McKinley v. Hessen,* 202 N.Y. 24, 30, 95 N.E. 32, 34 (1911). In further elaboration of this rule, the Court of Appeals has explained that:

> The doctrine of part performance may be invoked only if plaintiff's actions can be characterized as 'unequivocally referable' to the agreement alleged. It is not sufficient ... that the oral agreement gives significance to plaintiff's actions. Rather, the actions alone must be "unintelligible or at least extraordinary", explainable only with reference to the oral agreement.

*Anostario,* 59 N.Y.2d at 664, 463 N.Y.S.2d 409, 450 N.E.2d at 216. In other words, because the existence of an oral agreement must be inferred from conduct, actions that might well have been undertaken in fulfillment of the agreement but could also have been done for entirely different reasons are insufficient to prove the existence of the agreement and, hence, to justify a court ordering specific performance of it.

The instant appeal presents two questions, both of which we certify, concerning the scope of this exception to the Statute of Frauds: (1) whether the part performance doctrine is adequately invoked at the pleading stage by a claim that the plaintiff "took no action" with respect to a pre-existing written agreement, relying on an oral promise

allegedly made by the defendant to the plaintiff that the defendant would act in place of the plaintiff and fulfill all of the plaintiff's obligations under that agreement; and (2) whether the plaintiff's allegation of part performance by the defendant alone states a claim under the part performance doctrine.

### Background

Because Messner Vetere appeals the dismissal of its claims pursuant to Federal Rule of Civil Procedure 12(b)(6), we take the facts alleged in the complaint as true. *See, e.g., Murray v. Miner,* 74 F.3d 402, 403–04 (2d Cir.1996). In somewhat simplified form, these allegations are as follows.

In 1979, HBM Creamer Inc. ("Creamer"), an advertising agency, entered into a twenty-year written agreement ("the Lease") to rent the entire 27th floor and part of the 26th floor of an office building at 1633 Broadway, New York, N.Y. from a third party landlord ("Landlord"). Creamer occupied the 27th floor and its subsidiary, CDB Inc. ("CDB"), which was not in the advertising business, occupied the space on the 26th floor. The total rent was $775,450 per year.

In July 1986, Aegis—a foreign corporation—purchased all of Creamer's outstanding stock, making Creamer its wholly-owned subsidiary. A few months later, Aegis purchased another advertising agency in New York, Della Femina, Travisano & Partners, Inc. ("Della Femina"). Aegis then reorganized its subsidiaries so that all of its advertising agencies were under one holding company ("the Advertising Holding Company"), and all of its non-advertising subsidiaries were under a second such holding company ("the Non–Advertising Holding Company").[2]

In February of 1987, Creamer (the only tenant named in the Lease), with the Landlord's approval, sublet the space on the 26th floor of the building to a third party. Later that same year, Aegis moved essentially all of Creamer's operations into the offices of Della Femina, in another building in New York, and merged Creamer with Della Femi-

---

*io,* 59 N.Y.2d at 664, 463 N.Y.S.2d 409, 450 N.E.2d at 216.

**2.** In the process, CDB (because a non-advertiser) was removed from Creamer and transferred to the Non–Advertising Holding Company.

na to create Della Femina McNamee Inc. ("DFM"). Thus, DFM became Creamer's successor to the Lease. At the same time, with Creamer no longer in the building, Aegis, its Non–Advertising Holding Company, and CDB took over and occupied the space on the 27th floor. No sublease agreement for this space was ever made, however, and no written assignment of the Lease was ever executed.[3]

A little more than a year later, in March of 1988, Aegis sold 20% of the stock in its Advertising Holding Company (and therefore a 20% interest in DFM) to Messner Vetere.[4] Although DFM (fka Creamer) remained the named tenant on the Lease, Aegis, according to the complaint, agreed (in conjunction with this sale of shares) to have its Non–Advertising Holding Company—which was still a wholly-owned subsidiary—both "assume direct responsibility for all obligations under

3. This state of affairs presumably arose: (a) because Creamer's successor, DFM, was not only the named tenant but also Aegis' wholly-owned subsidiary, and hence no sublet agreement seemed necessary; and (b) because under the terms of the Lease, any request by DFM to assign the Lease was not only subject to refusal by the Landlord but also gave the Landlord the unilateral right to terminate the Lease.

4. The purchaser was, in actuality, a predecessor of Messner Vetere that went through multiple corporate transformations before taking its present form. For the sake of simplicity, however, we will refer to all relevant Messner Vetere predecessors as "Messner Vetere."

5. In September 1990, in a separate transaction with Aegis, Messner Vetere purchased all of the outstanding shares of CDB (the non-advertiser that was formerly a subsidiary of Creamer but had been separated from it by Aegis, and was still occupying space as an informal subtenant under the Lease). The purchase agreement for CDB stated that:

> CDB subleases, 19,675 square feet of office space at 1633 Broadway, New York, New York at a monthly rental of $44,184. There is no formal sublease with respect to these premises. The lessee under the lease is Creamer, Inc. (now DFM). The lease prohibits assignment without consent except under certain circumstances including assignment to a company under common control with lessee. As DFM and CDB are not at present under common control, the sublease to CDB is not permitted under the terms of the lease.

the Lease" and "hold Creamer ... and any successor-in-interest, harmless from any further financial exposure on the Lease." This 1988 agreement was never put into writing.

In October 1989, Messner Vetere increased its holdings in the Advertising Holding Company—and therefore in DFM—to 60%.[5] And in June 1992, Messner Vetere bought the remaining 40% of DFM from Aegis, making DFM its wholly-owned subsidiary.

Subsequently, on December 3, 1992, Mark Silver, a group comptroller with Aegis, sent a memorandum to the individual at Aegis who had been acting as administrator of the Lease. The memorandum, which Messner Vetere attached to its complaint, stated:

> We are currently preparing a list of our property liabilities around the Group. I believe that our only property in the U.S. is now Broadway and I would be

See *Messner Vetere*, 974 F.Supp. at 272. In other words, the parties to the purchase agreement were apparently concerned that, because DFM and CDB were no longer commonly owned, CDB was an illegal subtenant (because never approved by the Landlord).

This fear may have been misplaced. *Prior to the sale*, CDB was wholly-owned by Aegis' holding company, whereas Messner Vetere's predecessor had a 60% controlling interest in DFM, and so the two were not "commonly controlled." At that time, therefore, CDB was probably an illegal subtenant. After the sale, by contrast, Messner Vetere's predecessor owned CDB in its entirety and at the same time continued to have a 60% controlling interest in DFM. Thus, it could be argued that the parties only became concerned with noncompliance with the Lease after the violation of its terms had technically ceased because the same parent, Messner Vetere's predecessor, held controlling interests in both companies. The issue is, however, irrelevant to the case before us.

As additional terms to its purchase of CDB, Messner Vetere promised Aegis that it would have CDB remain a subtenant in the 1633 Broadway space through the end of the Lease (in 1999), and also assured Aegis that CDB would pay its rent, its proportionate share of the costs for partitioning the space, and any monies CDB owed to Aegis arising from the remodeling of the rental space to suit CDB's needs. The parties also agreed that, if the space was marketed, CDB and Aegis would each bear one-half of the sales costs and receive one-half of the proceeds. All of these terms were in writing, and it is undisputed that Messner Vetere complied with them by having CDB continue to pay all monies, including

grateful if you would send me a chapter and verse and the current amount of space occupied by each company/business on two floors. I believe the lease is still in the name of HBM Creamer but could you please confirm.

*Id.*[6]

According to the complaint, from the time, in 1987, that Creamer moved out of the space until May 1, 1995, Aegis negotiated sublease agreements with third parties, collected sublease payments, made all payments due to the Landlord, and filed commercial tax returns and paid commercial rent tax to the City of New York for the space. It never consulted with, or provided notice to, Creamer or its successors with respect to these actions. In short, it assumed Creamer's obligations under the Lease without ever bothering to execute a written agreement to that effect, even though, by June 1992, Aegis no longer had any financial interest whatsoever in Creamer.

On March 9, 1995, Aegis sent Messner Vetere a letter that changed matters entirely. Aegis first noted that it had been fulfilling the obligations under the Lease, and then declared that it "would terminate all involvement with respect to the Lease as of April 30, 1995." Beginning on May 1, 1995, therefore, Messner Vetere began making rent payments to the Landlord, and has never disputed that, as between the *Landlord* and itself, it is liable (as Creamer's successor) for the rent. Messner Vetere also filed the instant action against Aegis, however, arguing that, as between *Aegis* and itself, Aegis is responsible for fulfilling the Lease obligations. Accordingly, Messner Vetere seeks (1) a declaratory judgment that Aegis had assumed all obligations under the Lease, and (2) damages for breach of contract (because of the payments Messner Vetere has had to make to the Landlord since May 1, 1995).

The thrust of Messner Vetere's complaint is that Aegis violated the alleged 1988 oral agreement between it and Messner Vetere that required Aegis both to assume all obligations and benefits under the Lease and to hold Creamer and its successors harmless with respect to the Lease.

Aegis moved for dismissal, principally under Rule 12(b)(6), on the ground that Messner Vetere was barred from recovery by the Statute of Frauds. Messner Vetere responded that, although the Statute of Frauds did apply to the alleged agreement, its claims were nonetheless saved by the "part performance" doctrine.

The district court held that Messner Vetere had not stated a claim sufficient at the pleading stage to invoke the part performance exception to the Statute of Frauds. *See Messner Vetere,* 974 F.Supp. at 274–75. Additionally, the court concluded that Messner Vetere's claim for damages (as opposed to its claim for specific performance) sounded in law rather than equity, and therefore could not be redressed by the equitable remedy of the part performance doctrine. *See id.* at 275. It therefore granted a Rule 12(b)(6) dismissal. Messner Vetere appealed. We now certify two questions to the New York Court of Appeals in order to clarify New York's part performance doctrine.[7]

## Discussion

### A. *Inaction*

■ Messner Vetere claimed in its complaint that defendant Aegis acted in accordance with the terms of the supposed oral agreement by assuming all of Creamer's obligations under the Lease. Messner Vetere did not, however, list any specific actions that it, the plaintiff, took pursuant to the terms of this agreement. Indeed, as the district court noted, "the complaint does not allege that

rent, that it owed to Aegis with respect to the space.

6. The memorandum also explained that Aegis had recently sold a subsidiary that was a subtenant in the building, and that the purchaser had agreed to continue to occupy the space until December 31, 1994. *See Messner Vetere,* 974 F.Supp. at 272.

7. New York law does not provide for certification by the district court. *See* N.Y. Comp.Codes R. & Regs. tit. 22, § 500.17(a) (McKinney's 1998 N.Y. Rules of Court). Accordingly, while we believe that certification is appropriate to resolve some open questions of state law raised by this case, it was not only entirely proper, but necessary, for the district court to attempt to decide these same issues.

Messner Vetere had any obligations under the agreement." *Messner Vetere,* 974 F.Supp. at 275. The only statement that Messner Vetere made about its own conduct was that, from June 1992 until May 1, 1995, "in reliance on [Aegis'] assumption of the Lease obligations, Plaintiff took no action with respect to the Lease, including with respect to the subleasing of portions of the Leased Space." [A 27]

Messner Vetere points to no New York cases or other authority to support its theory that inaction by a plaintiff is sufficient to fall within the purview of the part performance exception to the Statute of Frauds. It nevertheless argues that we should extend the part performance doctrine to cover such situations.

The only authority we can find that in any way speaks to the sufficiency of a plaintiff's allegation of inaction is *Hirsch v. Fasalino,* 270 A.D. 826, 60 N.Y.S.2d 45 (App. Div., 2d Dep't 1946). That brief memorandum decision reads, in whole:

> Action to compel specific performance of an oral agreement to execute and deliver a bond and mortgage upon real estate. The answer pleads the Statute of Frauds as a defense.
>
> The plaintiff's alleged failure to take steps to prosecute his action for fraud or to prevent defendant Fasalino from leaving the jurisdiction is insufficient to constitute part performance so as to take the case out of the Statute of Frauds. Such inaction is completely ambiguous and the pleadings contain nothing by which it might be deemed referable to an interest in real estate, except by reason of the alleged oral promise.
>
> Order denying motion of defendant Gerofsky to dismiss the complaint, pursuant to Rule 112 of the Rules of Civil Practice, reversed on the law, with $10 costs and disbursements, and the motion granted, with $10 costs.

*Id.*

*Hirsch* is consistent with the rule that a complaint may be dismissed if the alleged behavior by the plaintiff pursuant to an oral agreement is not " 'unequivocally referable'

to the agreement alleged." *Anostario,* 59 N.Y.2d at 664, 463 N.Y.S.2d 409, 450 N.E.2d at 216. The decision does not, however, make clear whether an allegation of inaction might be sufficient at the pleading stage if the plaintiff's decision to do nothing might be shown, in fact, to be "explainable only with reference to the oral agreement." *Id.*

Because part performance is an equitable remedy, it seems likely that the New York courts would require, at a minimum, either (1) an allegation that the plaintiff's inaction was not just a byproduct of the defendant's promise, but rather the satisfaction of a term of the oral agreement; or (2) a specific claim by the plaintiff of detrimental reliance. Neither was made here. We therefore believe that the district court's application of the part performance doctrine is probably correct. But, in the absence of any New York decisions, we prefer to certify whether Messner Vetere adequately alleged its own part performance of the supposed oral agreement when it stated that it "took no action" with respect to the Lease. *See, e.g., Great Northern Ins. Co. v. Mount Vernon Fire Ins. Co.,* 143 F.3d 659, 661–62 (2d Cir.1998) (certifying question of proper interpretation of a provision in a standard commercial general liability insurance contract because no state court decisions resolve the issue). We do so because "New York has a strong interest in deciding the issue certified rather than having the only precedent on point be that of the federal court, which may be mistaken," *Home Ins. Co. v. American Home Prods. Corp.,* 873 F.2d 520, 522 (2d Cir.1989) (quoted in *Great Northern Ins.,* 143 F.3d at 661–62).

### B. *Defendant's Conduct*

■ Messner Vetere also argues that, even if it does not adequately allege conduct *on its own part* that might save its claims despite the Statute of Frauds, that failing is irrelevant given the averments in the complaint concerning *defendant's* (i.e., Aegis') actions. These, Messner Vetere asserts, are sufficient to invoke the part performance exception.

There is substantial authority to support the conclusion that, under New York law, a

defendant's conduct alone does not constitute part performance for Statute of Frauds purposes. But the case law is not entirely clear. As we noted earlier, the traditional formulation of New York's part performance doctrine is that:

> when a parol agreement for the conveyance of real estate, void by the statute of frauds, has been proved and part performance has been shown *by acts of the party seeking relief,* which could have been done with no other design than that of performance, if an action at law is not an adequate remedy, the agreement will be specifically enforced.

*McKinley,* 202 N.Y. at 30, 95 N.E. at 34 (emphasis added). *See also Anostario,* 59 N.Y.2d at 664, 463 N.Y.S.2d 409, 450 N.E.2d at 216 ("The doctrine of part performance may be invoked only if *plaintiff's* actions can be characterized as 'unequivocally referable' to the agreement alleged." (emphasis added)).

In *Rose v. Spa Realty Associates,* 42 N.Y.2d 338, 397 N.Y.S.2d 922, 366 N.E.2d 1279 (1977), however, the Court of Appeals elaborated on the rule in *McKinley* by stating that, in order to determine whether there was part performance unequivocally referable to an oral agreement, "the court may consider not only past oral exchanges, but also the conduct of the *parties.*" *Spa Realty,* 42 N.Y.2d at 344, 397 N.Y.S.2d 922, 366 N.E.2d 1279 (emphasis added). In other words, after *Spa Realty,* the defendant's conduct, taken together with the plaintiff's, can be deemed probative of whether an oral agreement in fact existed.[8]

The Court of Appeals has not, however, taken the further step of concluding that a defendant's conduct *alone* is sufficient to establish part performance. And we tend to agree with the district court in the case before us that it would run counter to the purposes of the part performance exception to infer an oral agreement and afford an equitable remedy when the plaintiff did not take actions of its own in reliance on the alleged agreement, but instead passively benefitted from the plaintiff's performance. *See Messner Vetere,* 974 F.Supp. at 274–75.

It is possible, however, to read at least one Appellate Division decision as holding to the contrary. Despite the traditional rule in *McKinley* and its possible reaffirmance—notwithstanding *Spa Realty*—in *Anostario,*[9] the Third Department, in *Van Noy v. Corinth Central School District,* 111 A.D.2d 592, 489 N.Y.S.2d 658 (App. Div.3d Dept. 1985), affirmed a denial of summary judgment where the only evidence of part performance noted by the court concerned actions by the defendant. *Van Noy*—which was decided two years after *Anostario*—arose out of a suit by fifteen retired school teachers against the school district for which they had formerly worked. Plaintiffs alleged that, years before (and while they were still employed by the school district), the district had promised them an extension of their fringe benefits in lieu of a salary increase. *See id.* at 592, 489 N.Y.S.2d 658, 489 N.Y.S.2d at

---

**8.** *Spa Realty* concerned the application of a clause in a written contract stating that all modifications to the contract must also be in writing. Although the case therefore fell under a special statutory provision concerning such provisions, *see* N.Y. Gen. Oblig. Law § 15–301(1), and not the Statute of Frauds, the Court of Appeals relied on arguments and authority from cases involving the Statute of Frauds' part performance exception. *See Spa Realty,* 42 N.Y.2d at 343–44, 397 N.Y.S.2d 922, 366 N.E.2d at 1283. Moreover, lower state courts, as well as the federal district courts (applying New York law), have not hesitated, in Statute of Frauds cases, to follow the logic of *Spa Realty* by looking to the conduct of both parties to determine whether the part performance doctrine is applicable. *See e.g., Lamprecht v. Comte,* No. 93 Civ. 7928(LMM), 1994 WL 260867, at *4 (S.D.N.Y. June 7, 1994) (applying *Spa Realty* to § 5–701's judicially-created part performance exception); *Dietze v. Patterson,* No. 84 Civ. 5682(MBM), 1989 WL 31483 (S.D.N.Y. Mar.30, 1989) (holding that both plaintiff's and defendant's conduct compelled the conclusion, for summary judgment purposes, that part performance saved an oral agreement from running afoul of the Statute of Frauds); *Carlyle Record Warehouses Corp. v. Scherlo,* 94 Misc.2d 226, 404 N.Y.S.2d 530 (N.Y.Civ.Ct.1978).

**9.** See also *Frassetto v. Wallkill Generating Co.,* 944 F.Supp. 275 (S.D.N.Y.1996), in which the district court held, on summary judgment, that the part performance exception was not successfully invoked by the plaintiffs because, among other things, "the asserted 'part performance' consist[ed], not of the requisite acts of any plaintiff, but of payments by defendants." *Id.* at 276.

659. These health insurance benefits were supposedly to continue after plaintiffs retired. *See id.*

Ten years later, the school district reduced its health benefit contributions, and two years after that, it stopped paying the premiums altogether. *See id.* Plaintiffs sued, arguing that, because retirement benefits were computed based upon salary at the time of retirement, their retirement benefits would have been higher had they received raises instead of the promise of continuing health insurance coverage. *See id.* They therefore argued that the school district's promise to provide health benefits should be specifically enforced. The trial court denied partial summary judgment, which the school district had sought on Statute of Frauds grounds.[10] The Third Department affirmed, holding that the plaintiff had possible remedies under both the part performance exception and the doctrine of equitable estoppel. *See id.* at 593, 489 N.Y.S.2d at 659.

In doing so, the Appellate Division focused solely on the school district's actions. The court stated that:

> There is no doubt that defendant paid health insurance premiums for their [sic] teachers, both active and retired, for a most substantial period of time. Logic would favor a conclusion that the payments were not eleemosynary.

*Id.* at 659. In other words, the court indicated that a reasonable jury could find, based solely upon the *defendant* school district's payments to plaintiffs, that the district's conduct was unequivocally referable to the alleged oral agreement, and hence that the district could be forced to continue making such payments.

Given the facts of *Van Noy*, it is possible, however, to read the case as being implicitly based on traditional grounds. It seems entirely reasonable to conclude that the *Van Noy plaintiffs* had partly performed under the unwritten agreement by foregoing a salary increase in exchange for the health benefits that the agreement promised. And we suspect, given the Appellate Division's description of the suit, that the plaintiffs had, in fact, so argued. It follows that the court in *Van Noy* could be deemed to have considered plaintiffs' actions together with defendant's conduct as evidence of part performance. If so, the case would be no more than an unremarkable application of *Spa Realty*. But the alternative reading—that the court thought the school district's conduct alone was enough to place the case within the exception to the Statute of Frauds—is completely consistent with the court's opinion, and corresponds more directly to what the Appellate Division actually said.

As a result of *Van Noy*, therefore, it is not entirely clear whether New York's traditional expressions of the part performance doctrine, combined with the rule in *Spa Realty*, still require at least some conduct by plaintiffs pursuant to and in reliance on the oral agreement, or whether, instead, *Spa Realty*'s admonition to look at "the conduct of the parties," *Spa Realty*, 42 N.Y.2d at 344, 397 N.Y.S.2d 922, 366 N.E.2d 1279, is now to be read to permit claims even in situations in which the only conduct under the supposed oral agreement is by the defendant alone. For this reason, (despite the fact that the weight of authority appears to be against the plaintiff), and because the question presented concerns the interpretation of a central provision of the New York Statute of Frauds— and hence is likely to recur—we believe that certification is proper.[11] *See Home Ins. Co.*, 873 F.2d at 522.

---

10. Strangely, it appears that the school district sought summary judgment on this basis with respect to only one of the plaintiffs. It was the denial of this motion that the district appealed in *Van Noy*.

11. There is a considerable debate in the literature on the relative merits of certification. *Compare* Bruce M. Seyla, *Certified Madness: Ask a Silly Question . . .*, 29 SUFFOLK U.L.REV. 677 (1995) (emphasizing the limits of certification), *with* Bradford R. Clark, *Ascertaining the Laws of the*

*Several States: Positivism and Judicial Federalism after* Erie, 145 U. PENN. L.REV. 1459, 1544–63 (1997) (arguing for more frequent certifications). One argument often made against certification is the burden it allegedly places on state courts. *See, e.g., McCarthy v. Olin Corp.*, 119 F.3d 148, 153 (2d Cir.1997) ("Certification should not be used as 'a device for shifting the burdens of this Court to those whose burdens are at least as great.' " (quoting *Dorman v. Satti*, 862 F.2d 432, 434–35 (2d Cir.1988))). In this respect, however, we note that the review of certified questions

Additionally, we note that, although the first issue certified is a threshold question, and a decision by the Court of Appeals that Messner Vetere's claim that it "took no action" would appear by itself to be enough to warrant reinstatement of the instant cause of action, the second issue might, nevertheless, reemerge with a vengeance at a later point in the litigation. For, even if Messner Vetere's claims were to survive the pleading stage, it could still be determined at summary judgment or at trial that Messner Vetere's *inaction* was not "unequivocally referable" to the alleged oral agreement. Under such circumstances, the question of whether, in the absence of proof of plaintiff Messner Vetere's performance, defendant Aegis' actions alone would be sufficient to permit Messner Vetere to recover, would once again arise. Accordingly, we believe that, if the certification is accepted, the "resolution [of the second question] at this time by the New York Court of Appeals would aid in the administration of justice," *id.*, regardless of the answer given by that court to the first question.

### Certificate

Certificate to the New York Court of Appeals pursuant to N.Y. Comp.Codes R. & Regs. tit. 22, § 500.17(b) (McKinney's 1998 N.Y. Rules of Court) and § 0.27 of the Local Rules of the United States Court of Appeals for the Second Circuit.

It is hereby ORDERED that the Clerk of the Court transmit to the Clerk of the New York Court of Appeals a Certificate, together with a complete set of briefs, appendices, and record filed by the parties with this Court, stating the following questions:

   I. Whether the part performance doctrine is adequately invoked at the pleading stage by a claim that the plaintiff "took no action" with respect to a pre-existing written agreement, relying on an oral promise allegedly made by the defendant to the plaintiff that the defendant would act in place of the plaintiff and fulfill all of the plaintiff's obligations under that agreement.

   II. Whether the plaintiff's allegation of part performance by the defendant alone states a claim under the part performance doctrine. The parties are hereby ordered to bear equally such fees and costs, if any, as may be requested by the New York Court of Appeals.

is an entirely discretionary proceeding, and the New York Court of Appeals is under no obligation to accept the certification. *See* N.Y. Comp.Codes R. & Regs. tit. 22, § 500.17; *see also McCarthy*, 119 F.3d at 160 (Calabresi, J., dissenting) ("a state court that feels overburdened, or that for any other reason does not wish to decide the certified question, is always free to refuse to answer it.").