OPINION OF THE COURT
 

 Smith, J.
 

 This case presents us with two certified questions from the United States Court of Appeals for the Second Circuit regarding the adequacy at the pleading stage of a claim invoking the part performance exception to the Statute of Frauds.
 

 Plaintiff, Messner Vetere Berger McNamee Schmetterer Euro RSCG Inc., commenced an action in Federal District Court against defendant, Aegis Group pic, seeking a declaratory judgment and damages for breach of contract based upon an alleged oral agreement pertaining to plaintiffs obligations under a commercial lease, which, plaintiff claims, Aegis orally assumed. On Aegis’ motion, the District Court dismissed the complaint, concluding that Aegis’ conduct was not “unequivocally referable to the oral agreement” and that plaintiff had failed to state a claim sufficient at the pleading stage to invoke
 
 *232
 
 the part performance exception to the New York Statute of Frauds (974 F Supp 270, 274-275). Finding that the unresolved issues “concern [ed] the proper interpretation and application of New York’s part performance exception to the Statute of Frauds” (150 F3d 194, 195), the Second Circuit certified the following two questions for this Court’s review:
 

 “I. Whether the part performance doctrine is adequately invoked at the pleading stage by a claim that the plaintiff ‘took no action’ with respect to a pre-existing written agreement, relying on an oral promise allegedly made by the defendant to the plaintiff that the defendant would act in place of the plaintiff and fulfill all of the plaintiffs obligations under that agreement.
 

 “II. Whether the plaintiffs allegation of part performance by the defendant alone states a claim under the part performance doctrine”
 
 (*id.,
 
 at 202).
 

 We answer both questions in the negative. In the circumstances presented, plaintiff cannot claim the benefit of the part performance doctrine to avoid the Statute of Frauds.
 

 I.
 

 As stated by the Second Circuit in its certification, in 1979, HBM Creamer Inc., an advertising agency, entered into a 20-year written lease agreement with Paramount Equities, Ltd., as the agent for MRI Broadway Rental, Inc. The agreement provided for the rental of the entire 27th floor and part of the 26th floor of an office building at 1633 Broadway in New York City. Creamer occupied the entire 27th floor, and its subsidiary, CDB Inc., an entity not in the advertising business, occupied the space on the 26th floor. The total rent was $775,450 per year. In July 1986, defendant Aegis — an English company— purchased all of Creamer’s outstanding stock, making Creamer its wholly-owned subsidiary. Subsequently, Creamer, after a reorganization, became part of defendant’s Advertising Holding Company.
 

 In February 1987, Creamer, the only tenant on the lease, with the approval of the landlord, sublet the 26th floor space to an unrelated third party. Later that year Aegis moved essentially all of Creamer’s operations into another Manhattan building, and merged Creamer into Della Femina McNamee Inc. (DFM), which became Creamer’s successor to the lease. At the same time, Aegis, along with other entities, a Non-
 
 *233
 
 Advertising Holding Company and CDB, took over and occupied the 27th floor space previously occupied by Creamer. No sublease agreement or written assignment of the lease was ever executed. In March 1988, Aegis sold 20% of the stock in its Advertising Holding Company — and therefore a 20% interest in DFM — to plaintiff, Messner Vetere. In 1989, Aegis sold plaintiff an additional 40% and finally, in 1992, sold plaintiff its remaining 40% interest in DFM.
 

 The complaint alleges that although DFM (formerly Creamer) remained the named tenant on the lease, Aegis agreed with Messner Vetere, in conjunction with the sale of shares in 1988, to have Aegis’ Non-Advertising Holding Company both “assume direct responsibility for all obligations under the Lease” and “hold Creamer * * * and any successor-in-interest, harmless from any further financial exposure on the Lease.” This alleged agreement was also never put in writing.
 

 In September 1990, in a separate transaction with Aegis, plaintiff also purchased all of the outstanding shares of CDB. The purchase agreement included a reference to the 1979 lease agreement as follows:
 

 “CDB subleases, 19,675 square feet of office space at 1633 Broadway, New York, New York at a monthly rental of $44,184. There is no formal sublease with respect to these premises. The lessee under the lease is Creamer, Inc. (now DFM). The lease prohibits assignment without consent except under certain circumstances including assignment to a company under common control with lessee. As DFM and CDB are not at present under common control, the sublease to CDB is not permitted under the terms of the lease.”
 

 On December 3, 1992, Aegis’ group comptroller sent a memorandum to the individual at Aegis who had functioned as administrator of the lease. The memorandum, which plaintiff attached to its complaint, stated that the company was “currently preparing a list of [its] property liabilities” and believed that its only property in the United States was 1633 Broadway. According to the complaint, from the time Creamer moved out of the space in 1987 until May 1, 1995, Aegis negotiated sublease agreements with third parties, collected sublease payments, made all payments due to the landlord, filed commercial tax returns and paid commercial rent tax to the City of New York for the space. As alleged, Aegis never consulted with, or
 
 *234
 
 provided notice to, Creamer or its successors with respect to any of these activities. In short, Aegis assumed Creamer’s obligations under the lease without ever executing a written agreement to that effect, even though, by June 1992, Aegis no longer had any financial interest in Creamer.
 

 On March 9, 1995, Aegis sent plaintiff a letter in which Aegis first noted that it had been fulfilling the obligations under the lease, and then declared that it would “terminate all involvement with respect to the lease effective April 30, 1995.” Therefore, beginning on May 1, 1995, plaintiff began paying the rent for the space. Plaintiff has never disputed that as between the landlord and itself, it is liable (as Creamer’s successor) for the payment of the rent. Plaintiff then filed the instant action against Aegis in Federal District Court seeking damages for breach of contract and a declaratory judgment that Aegis assumed all obligations under the lease. Aegis moved for dismissal on the ground that plaintiff was barred from recovery by the New York Statute of Frauds (General Obligations Law §§ 5-701, 5-703). In response, plaintiff argued that although the Statute of Frauds did apply to the alleged oral agreement, its claims were nonetheless saved by the equitable doctrine of part performance.
 

 The District Court dismissed the complaint, holding that Aegis’ conduct was not “unequivocally referable to the oral agreement” and that plaintiff had failed to state a claim sufficient at the pleading stage to invoke the part performance exception to the New York Statute of Frauds (974 F Supp, at 274-275,
 
 supra).
 
 Additionally, the Court concluded that plaintiff’s claim for damages, as opposed to its claim for specific performance, sounded in law rather than equity, and therefore could not be redressed by New York’s equitable doctrine of part performance.
 
 [1]
 
 On plaintiff’s appeal, the United States Court of Appeals for the Second Circuit certified to this Court the aforementioned questions, which we accepted for review.
 

 
 *235
 
 II.
 

 It is long settled under New York’s Statute of Frauds that an oral agreement to convey an estate or interest in real property, other than a lease for a term not exceeding one year, is “nugatory and unenforceable,” and “[a] party to the agreement may legally and rightfully refuse to recognize or perform it”
 
 (Woolley v Stewart,
 
 222 NY 347, 350-351; General Obligations Law § 5-703). A party may, however, lose the benefit of the defense of the Statute of Frauds, “or waive its protection, by inducing or permitting without remonstrance another party to the agreement to do acts, pursuant to and in reliance upon the agreement, to such an extent and so substantial in quality as to irremediably alter [the] situation and make the interposition of the statute against performance a fraud” (222 NY,
 
 supra,
 
 at 351).
 

 Codified in New York’s General Obligations Law, section 5-703 (4),
 
 [2]
 
 the doctrine of part performance is based on principles of equity, and, specifically, recognition of the fact that it would be a fraud to allow one party to a real estate transaction to escape performance after permitting the other party to perform in reliance on the agreement
 
 (Walter v Hoffman,
 
 267 NY 365;
 
 McKinley v Hessen,
 
 202 NY 24,
 
 rearg denied
 
 202 NY 587). Part performance alone, of course, is not sufficient. The performance must be unequivocally referable to the agreement
 
 (Burns v McCormick,
 
 233 NY 230, 232;
 
 Woolley v Stewart,
 
 222 NY,
 
 supra,
 
 at 351).
 

 Although application of the part performance doctrine has traditionally been grounded on affirmative acts of the party aggrieved, in concept part performance in the form of inaction might also suffice. The doctrine, whose roots lie in equity to prevent injustice by fraud, is invoked as an equitable remedy by the party aggrieved and applied by courts of equity in the determination of what justice and fairness require. As a hallmark of equity, the doctrine remains malleable to address a myriad of facts and circumstances.
 

 To qualify as part performance, inaction — like affirmative acts — would have to be pleaded as a term of the oral agreement, alleged to be “unequivocally referable” to the oral agreement and coupled with an element of detrimental reliance. There would otherwise be “nothing to show that the plaintiff
 
 *236
 
 changed his position to his prejudice because of the contract so as to give rise to an estoppel”
 
 (Gross v Vogel,
 
 81 AD2d 576, 577, citing
 
 Walter v Hoffman,
 
 267 NY 365,
 
 supra; see,
 
 4 Corbin, Contracts § 18.6, at 512 [rev ed 1997] [“The performance must be in pursuance of the contract and in reasonable reliance thereon, without notice that the defendant has already repudiated the contract”]). Only then could the pleading have the potential to establish the type of “unjust and unconscientious loss and injury” that is required in the summoning of equitable relief
 
 (Woolley v Stewart,
 
 222 NY,
 
 supra,
 
 at 353;
 
 see, Walter v Hoffman,
 
 267 NY,
 
 supra,
 
 at 369-370).
 

 Here, plaintiffs pleadings fall short of the requirements. Plaintiffs allegation that it “took no action” with respect to the parties’ pre-existing written agreement, in reliance on the alleged existence of an oral agreement that Aegis would “act” in its place and “fulfill” all obligations under the lease, is not, without more, sufficient to invoke the equitable doctrine of part performance. As pleaded, plaintiffs inaction was not the result of any effort to satisfy the terms of the purported oral agreement
 
 (see,
 
 150 F3d,
 
 supra,
 
 at 199). In addition, plaintiff fails to allege any element of detrimental reliance. To the contrary, any alleged payment of rent by Aegis between June 1992 and May 1995 worked to the benefit of Messner Vetere, not to its detriment.
 

 We therefore answer the first certified question, on the facts presented, in the negative. Plaintiffs inaction, as pleaded, is insufficient to defeat a Statute of Frauds defense. As Judge Cardozo warned, “The peril of perjury and error is latent in the spoken promise”
 
 (Burns v McCormick,
 
 233 NY 230, 234,
 
 supra).
 
 Hence, careful pleading is required to overcome the heavy burden created by the Statute of Frauds (General Obligations Law § 5-703;
 
 compare, Cron v Hargro Fabrics,
 
 91 NY2d 362, 367-368 [nothing short of full performance is required to take an oral agreement out of the General Obligations Law § 5-701];
 
 Meyers v Waverly Fabrics,
 
 65 NY2d 75, 79 [same];
 
 Tyler v Windels,
 
 227 NY 589,
 
 affg
 
 186 App Div 698 [same]).
 

 III.
 

 Next, we consider the second certified question whether part performance by defendant alone states a claim under the part performance doctrine. Under our jurisprudence, it is the conduct of the entity seeking to enforce the oral agreement, and its detrimental reliance on the agreement, that makes proper the invocation of equitable principles. This Court, in
 
 *237
 

 Walter v Hoffman
 
 (267 NY 365,
 
 supra),
 
 stated that “[u]nless there has been part performance by the suitor, there has ordinarily been no change of position by him, and, therefore, no injustice to him if the contract is not performed. To that extent, therefore, the acts of part performance relied on must be the acts of the suitor”
 
 (id.,
 
 at 370, citing
 
 Rathbun v Rathbun,
 
 6 Barb 98, 106).
 

 In
 
 Freeman v Freeman
 
 (43 NY 34, 39), part performance by the defendants was ruled sufficient to remove the case from the Statute of Frauds. Notably, however, there it was the plaintiff who was insisting on the protection of the Statute, as against the defendants who had performed in reliance on the deal. In ruling for the defendants, and thereby rejecting the notion that part performance by the “plaintiff” is required, this Court concluded “[p]art performance by the party seeking to enforce the contract is sufficient”
 
 (id.,
 
 at 39). Any performance by the party insisting on the Statute of Frauds was ruled immaterial.
 
 [3]
 

 While in the typical case it will be the “plaintiff’ who has performed in reliance on the oral agreement, as against a defendant insisting on the Statute of Frauds, the nomenclature of the parties is not what is significant. This is not to say, however, that the conduct of the entity seeking to enforce the Statute of Frauds is always irrelevant
 
 (see, Rose v Spa Realty Assocs.,
 
 42 NY2d,
 
 supra,
 
 at 344 [noting that the court may consider the conduct of both parties on the issues of whether an oral agreement in fact exists and whether the alleged part performance is unequivocally referable to that agreement]). But it is only the acts and reliance of the suitor that are determinative of what equity requires.
 

 Because the doctrine of part performance is based upon the equitable principle that it would be a fraud to allow one party, insisting on the Statute, to escape performance after permitting the other party, acting in reliance, to substantially perform, the acts of part performance must have been those of the party insisting on the contract, not those of the party insisting on the Statute of Frauds
 
 (see, McKinley v Hessen,
 
 202 NY
 
 *238
 
 24, 30,
 
 rearg denied
 
 202 NY 587, supra;
 
 Williams v Morris,
 
 95 US 444, 457; 61 NY Jur 2d, Frauds, Statute of, § 254, at 395-397; 73 Am Jur 2d, Statute of Frauds, § 411, at 38-39).
 

 Accordingly, both certified questions, on the facts presented, should be answered in the negative.
 

 Chief Judge Kaye and Judges Bellacosa, Levine, Ciparick, Wesley and Rosenblatt concur.
 

 Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the questions by this Court pursuant to section 500.17 of the Rules of the Court of Appeals (22 NYCRR 500.17), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified questions answered in the negative.
 

 [1]
 

 . Although both the District Court and the Court of Appeals noted, citing to our opinion in
 
 Anostario v Vicinanzo
 
 (59 NY2d 662, 664), that this Court “has recognized a parallel judicially-created part performance exception to [General Obligations Law] § 5-701” (150 F3d 194, 195, n 1,
 
 supra;
 
 974 F Supp 270, 275-276,
 
 supra),
 
 we have not in fact adopted that proposition. In fact,
 
 Anostario
 
 does not cite to General Obligations Law § 5-701, and is wholly grounded upon General Obligations Law § 5-703. Because we view the instant case as governed by General Obligations Law § 5-703, we accepted the Second Circuit’s certified questions to clarify these issues of law.
 

 [2]
 

 . General Obligations Law § 5-703 (4) provides: “Nothing contained in this section abridges the powers of courts of equity to compel the specific performance of agreements in cases of part performance.”
 

 [3]
 

 . Our statement in
 
 Rose v Spa Realty Assocs.
 
 (42 NY2d 338, 343) that “the court may consider not only past oral exchanges, but also the conduct of the parties” is not to the contrary. There, we noted that General Obligations Law § 5-703 was not pleaded and was therefore not involved in the case (42 NY2d, at 343). Furthermore, that statement concluded only that both parties’ conduct could be deemed probative of whether an oral agreement in fact existed and, if so, whether the alleged part performance was unequivocally referable to that agreement.