Todd M. ROBERTS, Plaintiff,

v.

Dr. Mahmood KARIMI and Johanna Karimi, Defendants.

No. 97–CV–4756 (ADS).

United States District Court, E.D. New York.

Dec. 22, 1999.

Roberts, Sheridan & Kotel, New York City, Michael J. Lane, Gabriel Nugent, of counsel, for Plaintiff.

Silver, Forrester, Schisano, Lesser & Tamsen, New Windsor, NY, Barry B. Silver, Sarah Dreyer, of counsel, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Can an affidavit, given by a defendant in a unrelated lawsuit some 16 months after the defendant has allegedly made an oral contract, constitute a "writing" sufficient to remove that oral contract from the Statute of Frauds? This Court finds that it can.

This breach of contract case concerns an aborted sale by Defendants to the Plaintiff of their house in East Quogue, N.Y. Presently before the Court are cross-motions by both parties for partial summary judgment with regard to the sufficiency of the alleged contract of sale. The Court is also now prepared to rule on the Defendants' motions for judgment as a matter of law at the close of the Plaintiff's case, at the close of the evidence, and following the verdict, and on the Plaintiff's post-verdict request for judgment directing specific performance of the contract.

### *BACKGROUND*

In the Spring of 1997, the Plaintiff took an interest in purchasing the Defendants' house in East Quogue, N.Y. The Plaintiff contacted Deborah Foglia, a real estate agent at the brokerage that listed the house, and after touring the house, began preliminary negotiations to purchase it. All of the parties' negotiations were conducted though Foglia; the parties never spoke directly to each other. On or about May 27, 1997, the parties, through Foglia as intermediary, apparently reached an oral agreement by which the Plaintiff would purchase the house for $ 610,000, subject to some minor conditions and a mortgage to be held by the Defendants. Foglia then drafted a "Memorandum of Sale" (Plaintiff's Ex. 2) on a form created by the brokerage, inserting the parties'

names and addresses, the names and addresses of the parties' lawyers, the address of the property, the sale price, a closing to be held "ASAP," and listing the conditions of the sale as "home inspection-termite, owner will hold $200,000 mortgage for 5 years, rental will be prorated at closing." At the bottom of the form, on a line marked "Seller's Agent," Foglia signed her name. On direct examination during the Plaintiff's case, Foglia admitted that her involvement with the sale was not pursuant to any listing agreement or other formal, written authorization by the Defendants for her to act on their behalf.

Between May 27, 1997 and July 22, 1997, the ultimate scheduled closing date, the Defendants' attorneys sent copies of an unexecuted form real estate contract to the Plaintiff, and the Plaintiff's counsel made modifications to the contract including inserting a clause requiring the plumbing and heating systems to be in working order. In the cover letter enclosing the modified contract, which the Plaintiff had signed, the Plaintiff's attorney also requested that the Defendants give a warranty for the plumbing and heating systems for 6 months following the closing. However, it is undisputed that the Defendants never signed this or any other contract. During this same timeframe, the Plaintiff conducted a home inspection that, apart from a missing coil that made inspecting the heating system impossible, was satisfactory. The Defendants eventually arranged to have the coil re-installed, and a few days prior to the closing, the Plaintiff conducted a second inspection of the heating system.

On July 22, 1997, the Defendants refused to proceed with the scheduled closing. The parties differ on why the July 22, 1997 closing was cancelled. The Plaintiff claims that the Defendants demanded an increase in the purchase price to match a subsequent offer they had received and refused to prorate the rent paid by the current tenants. The Defendants claimed that the sale was to be an "as us" sale and that the rent was not to be prorated between the parties.

The Plaintiff then commenced this action for specific performance and to recover damages based on two causes of action: (i) breach of contract and (ii) promissory estoppel. The parties cross-moved for summary judgment, with the Plaintiff contending that there existed, as a matter of law, an enforceable contract to sell the property, and the Defendants contending that the alleged contract is barred, as a matter of law, by the Statute of Frauds because it was not signed by them. This Court reserved decision on the motions until the conclusion of the Plaintiff's case. Following the Plaintiff's case, the Court orally denied the Defendants' motion for summary judgment for reasons more fully set forth herein.

Upon the consent of both sides, the portion of the verdict sheet presented to the jury relating to the breach of contract cause of action asked only whether the Plaintiff had proven that there was a "meeting of the minds," and therefore a valid contract between the parties; the verdict sheet did not direct the jury to find whether there was performance on the part of the Plaintiff or which party had precipitated the breach. The jury returned a verdict in favor of the Plaintiff on the breach of contract cause of action, finding that there had been a meeting of the minds, and therefore a valid contract, and awarded damages in the amount of $100,000. The Defendants now move for judgment as a matter of law dismissing the complaint, while the Plaintiff requests that the Court order specific performance of the contract.

### DISCUSSION

Summary judgment is appropriate if the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986);

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986 ); *Wilkinson v. Russell*, 182 F.3d 89, 96–97 (2d Cir.1999); *In Re: Blackwood Associates, L.P.*, 153 F.3d 61, 67 (2d Cir. 1998). The Court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Quaratino v. Tiffany & Co.*, 71 F.3d 58 (2d Cir.1995); *Twin Laboratories, Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir.1990).

A similar standard applies in deciding a motion for judgment as a matter of law under Fed.R.Civ.P. 50(a)(1). *This Is Me, Inc. v. Taylor*, 157 F.3d 139 (2d Cir.1998); *Concerned Area Residents for the Environment v. Southview Farm*, 34 F.3d 114 (2d. Cir.1994); *Weldy v. Piedmont Airlines*, 985 F.2d 57 (2d Cir.1993). Under a motion for judgment as a matter of law, the court must determine whether a reasonable jury could only reach one verdict on the evidence presented. *Id.* In making this determination, the court is required to view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the non-moving party—in this case, the Plaintiff. *Id.*

**A. As to Defendants' motion for summary judgment on the Statute of Frauds**

■ New York State's Statute of Frauds, N.Y. Gen. Oblig. L. § 5–703(1), provides that

> [a]n estate or interest in real property ... cannot be created, granted, assigned, surrendered or declared, unless ... by a deed or conveyance in writing, subscribed by the person creating, granting, assigning, surrendering or declaring the same, or by his lawful agent, thereunto authorized by writing.

*See Messner, Vetere, Berger, McNamee, Schmetter Euro RSCG, Inc. v. Aegis Group PLC*, 93 N.Y.2d 229, 689 N.Y.S.2d 674, 711 N.E.2d 953 (1999). "Subscribed by the person," as used in the statute, merely requires that the party to be charged has signed the writing. *Id; see also Blacks Law Dictionary*, sixth ed. at 1427 ("subscribe" defined as "Literally to write underneath, as one's name:... To sign at the end of a document"). In addition to being signed by the party against which it is offered, a writing sufficient to meet the Statute of Frauds must also "designate the parties, identify and describe the subject matter and state all the essential or material terms of the contract." *Wacks v. King*, 260 A.D.2d 985, 689 N.Y.S.2d 298 (3d Dept.1999); *DeRosis v. Kaufman*, 219 A.D.2d 376, 641 N.Y.S.2d 831 (1st Dept.1996). A sufficient agreement may be assembled from several separate documents so long as those writings are clearly connected to the same subject matter or transaction either expressly or by internal evidence. *Syman v. Vanderheuval*, 249 A.D.2d 870, 672 N.Y.S.2d 454 (3d Dept.1998); *DeRosis, supra.*, 641 N.Y.S.2d at 833.

■ The Plaintiff contends that the "Memorandum of Sale," drafted and signed by Foglia, suffices to meet the requirement of the Statute of Frauds because Foglia was Defendants' "lawful agent." However, the terms of both the Statute of Frauds and of N.Y. Gen. Oblig. L. § 5–1111 require the principal's authorization of the agent to act on his behalf be memorialized in writing. Foglia's testimony at the trial established that the Defendants had not designated her in writing to act as their agent. Foglia's testimony was clear that no formal listing agreement or brokerage contract, exclusive or otherwise, existed. In the absence of any written designation authorizing Foglia to act on the Defendants' behalf, the Court finds that the Memorandum of Sale, signed by Foglia, is insufficient under New York law to bind the Defendants for purposes of the Statute of Frauds.

■ The Defendants have also introduced a September 9, 1998 affidavit, sworn to by Defendant Mahmood Karimi, submitted in conjunction with a lawsuit in state

court brought by Foglia's brokerage, seeking a commission from Defendants for procuring a buyer for the house. In that affidavit, Karimi states:

> 7. That on or about May 27, 1997, the plaintiff located Todd Roberts and Grand Chelsea Holdings, Ltd. as a potential purchaser of the property.
>
> 8. A memorandum of sale was drafted by the plaintiff which stated the purchase price, a contingency involving termites, as well as when the commission became due and owing. The property was offered for $610,000 which was less than half of the original sale price with an "as is" condition.
>
> 9. *Initially, I was agreeable to the terms outlined in the memorandum of sale.* However, the attorney for the buyer contacted my attorney and attempted to negotiate certain costly repairs ignoring the above referenced "as is" provision.

*Karimi Aff.*, sworn to Sept. 9, 1998 (emphasis added).

Also in evidence is a note written by the Defendant Mahmood Karimi to his attorney in on May 29, 1997 which states "Attention Mr. Munzel! Please note: The house is sold *as is* and as is rented." (Emphasis in original). The Plaintiffs also introduced an affirmation dated September 20, 1999, by Sarah Dreyer, one of the Defendants' attorneys, as an admission under Fed.R.Evid. 801(d)(2). In that affidavit, which was submitted as part of the Defendants' summary judgment motion, Dreyer states, in part:

> In a nutshell, defendants agreed to sell their home located at 79 Dune Road AS IS for $610,000 . . . Defendants were in a position to execute the contracts prepared by their own attorneys and would have signed the same, if the contract without the rider had been executed by the plaintiff.

▬ Although the authorities on the subject are scant, the Court finds that "pleadings and court affidavits can be a memorandum . . . sufficient to bring an oral contract out of the statute of frauds." *Estate of Meledandri*, 108 Misc.2d 972, 437 N.Y.S.2d 996 (Surrog. Ct. N.Y. County 1981), *citing Cook v. Barr*, 44 N.Y. 156 (1870). There is no requirement that the writing needed to satisfy the Statute of Frauds be made contemporaneously with the agreement. *Weitnauer Trading Co. v. Annis*, 516 F.2d 878, 880 (2d Cir.1975); *see also* 61 N.Y.Jur.2d, *Frauds, Statute of* § 148 ("[s]ince a memorandum is generally required only to evidence the contract and not to constitute it . . . the memorandum may be executed at any time before an action is brought on the agreement, or at any time before trial"). Indeed, giving effect to the admissions in the affidavit of Karimi and affirmation of Dreyer, that the parties came to an agreement on the terms of the sale on May 27, 1997 is consistent with the purpose of the Statute of Frauds, which is to protect persons from the fraudulent enforcement of agreements that were never made; not to allow parties to evade genuine agreements they have reached. *See* 2A Corbin, *Corbin on Contracts* § 498 (1950 & 1984 Supp.).

Here, the note and affidavit of Karimi, the Memorandum of Sale that it expressly affirms, and the affirmation of Dreyer all combine to form a "writing" that is sufficient to meet all the requirements of the Statute of Frauds. Specifically, the Memorandum of Sale designates the parties to the agreement as the Plaintiff and the Defendants; both the Memorandum of Sale and the affidavit identify and describe the subject matter of the transaction, namely the house on Dune Road in East Quogue; and collectively, the documents recite all the essential or material terms of the contract, such as the selling price, the conditions of the sale, and the "as is" nature of the agreement. The affidavit, signed by Mahmood Karimi, expressly admits that he accepted these terms at the time the Memorandum of Sale was drafted, thus evidencing that the parties genuinely reached an agreement to sell the property on those terms.

While the Defendants' opposition to the Plaintiff's motion for summary judgment disputed the assertion in Karimi's affidavit that he ever agreed to the terms memorialized in the Memorandum of Sale, such as a prorated sharing of rental income or an expedited closing date, testimony by the Defendants that the allegations in the affidavit are incorrect or mean something different than what they say merely raised issues of credibility for the jury to resolve. On a motion for summary judgment, the Court must view the evidence in the light most favorable to the Plaintiff, and thus finds that the Plaintiff has put forth sufficient evidence of a written contract to survive the Defendants' motion for summary judgment on the grounds of the Statute of Frauds.

Therefore, the Defendants' motion for summary judgment on the grounds of the Statute of Frauds is denied.

### B. As to Defendants' motions for judgment as a matter of law

■ The Defendants have moved and now renew their motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a) to set aside the jury's verdict on the breach of contract claim, on the grounds that the evidence fails to show that there was any "meeting of the minds."

Contrary to the arguments of defense counsel, this is not the sort of compelling case in which judgment as a matter of law is appropriate. Taken in the light most favorable to the Plaintiff, the Memorandum of Sale and the September 9, 1998 affidavit together demonstrate that on May 27, 1997, the Plaintiff and the Defendants reached an agreement to sell the house on an "as is" basis for $610,000, prorating the payments on the existing rental. Other evidence bolsters such a finding, including the affirmation of the Defendants' attorney which states "In a nutshell, defendants agreed to sell their home located at 79 Dune Road AS IS for $610,000" and "Defendants were in a position to execute the contracts prepared by

their own attorneys and would have signed the same, if the contract without the rider had been executed by the plaintiff," and a note sent from the Defendants to their attorney on or about May 29, 1997 which states "the house is sold *as is* and as rented." (Emphasis in originals). This documentary evidence alone is sufficient to support the jury's finding that the parties had a meeting of the minds on May 27, 1997.

The Defendants' reliance upon the case of *Gold v. Vitucci,* 168 A.D.2d 607, 563 N.Y.S.2d 443 (2d Dept.1990) is misplaced. In *Gold,* the court held that written authorization of the attorney to act on behalf of his client was necessary before the attorney's signing of a real estate contract on behalf of his client could be used to remove the client's oral agreement from the Statute of Frauds. *Id.* Unlike the plaintiff in *Gold,* the Plaintiff here does not rely on Dreyer's affirmation to overcome the Statute of Frauds; Defendant Mahmood Karimi's affidavit, supplemented by the Memorandum of Sale does that. Dreyer's affirmation simply confirms Karimi's own admission that a deal was struck on May 27, 1997, and is simply one more piece of evidence that was properly considered by the jury in assessing whether an agreement was ever reached. *Gold* does not address the admissibility of the attorney's acts as an evidentiary matter, and thus, does nothing to alter this Court's conclusion that the jury reasonably found that the Defendants had agreed to the terms recited in the Karimi affidavit and the Memorandum of Sale.

In addition, both Foglia and the Plaintiff testified that the parties reached agreement on all material terms on this date. While it is true that neither the Plaintiff nor Foglia ever testified that their understanding was that the deal included the "as is" provision, the Defendants' admissions in the various documents provide a sufficient basis for the jury to find that the "as is" provision was part of the parties' agreement on May 27, 1997. The Plaintiff did

apparently repudiate the "as is" provision by including a clause in his proposed contract that required the plumbing and heating systems to be in working order at the time of closing as well as by requesting that the Defendants warrant those systems for six months following the sale. However, the Defendants did not request that the jury make a finding of whether the Plaintiff failed to perform under the terms of the original agreement, or precipitated the breach by demanding conditions inconsistent with those agreed to, and thus, the Court will not substitute its opinion for that of the jury on an issue that was not presented to them.

The Court also denies the Defendants' motion for judgment as a matter of law as it relates to the jury's award of damages. The jury's award of $100,000 was not itemized, but is consistent with the evidence in the record. The Plaintiff testified that the breach caused him to incur damages for lost rental, lost tax benefits, and storage fees totaling $235,000 over the 30 month-period between the aborted closing and the trial. While the Defendants challenge the accuracy of these figures, the Second Circuit has observed that "absolute certainty" is not required for a jury to fashion a remedy, and the jury is permitted to exercise a reasonable degree of speculation and inference to calculate an award. *Cruz v. Local Union No. 3*, 34 F.3d 1148, 1156 (2d Cir.1994). Here, the jury was presented with estimates of $90,000 in lost gross summer rents, $55,000 in lost tax benefits related to a failed like-kind exchange, and $30,000 in other damages suffered by the Plaintiff over the 30 months between the breach and the trial. Whether the jury rejected certain elements of damage or merely discounted them to reflect the Plaintiff's net, rather than gross, losses is immaterial. The evidence before the jury, taken in the light most favorable to the Plaintiff, reflects that the Plaintiff suffered $235,000 in damages, and thus the jury's award of $100,000 is certainly supported by the evidence.

Therefore, because there is evidence in the record upon which the jury could have found that the parties had a meeting of the minds on May 27, 1997 and that the Plaintiff suffered $100,000 in damages because of the Defendants' breach of that agreement, the Court denies all of the Defendants' motions for judgment as a matter of law.

## C. As to the Plaintiff's request for specific performance

Under New York State law, a court may grant specific performance only where (i) there is a valid contract between the parties; (ii) the plaintiff has substantially performed under the contract and is willing and able to perform its remaining obligations; (iii) the defendant is able to perform its obligations; and (iv) the plaintiff has no adequate remedy at law. *Nemer Jeep–Eagle, Inc. v. Jeep–Eagle Sales Corp.*, 992 F.2d 430, 433 (2d Cir.1993); *Niagara Mohawk Power Corp. v. Graver Tank & Mfg. Co.*, 470 F.Supp. 1308, 1324 (N.D.N.Y.1979); *U.S. Fidelity & Guaranty Corp. v. J. United Elec. Contracting Corp.*, 62 F.Supp.2d 915, 921 (E.D.N.Y. 1999). However, "the right to specific performance is not automatic," *Pecorella v. Greater Buffalo Press*, 107 A.D.2d 1064, 486 N.Y.S.2d 562 (4th Dept.1985), and even though all the elements are present, the decision to grant specific performance is within the sound discretion of the trial court. *Niagara Mohawk, supra.*

In this case, the Court finds that the Plaintiff has failed to demonstrate all of the necessary elements to entitle him to specific performance. To obtain specific performance, a party must demonstrate that he was prepared to perform his obligations under the contract. However, in this case, the Plaintiff's last communication with the Defendants a few days prior to closing included a proposed contract and confirming letter that requested that the plumbing and heating system be repaired by the Defendants and warranted for six months after the conveyance of title.

These demands are inconsistent with both the "as is" provision mentioned in Defendant Karimi's affidavit and the terms of the Memorandum of Sale, which make no mention of pre-closing repairs or post-closing warranties. Because the Plaintiff provided no testimony or evidence to suggest that he was prepared to close on the sale even if such terms were rejected, the Court finds that the Plaintiff has failed to prove that he substantially performed or that he was ready, willing, and able to perform his obligations under the May 27, 1997 agreement.

Moreover, the Court finds that the Plaintiff has an adequate remedy at law in the form of monetary damages. Although this case concerns the sale of a piece of residential real property, the Plaintiff testified that he was primarily intending to use the house to generate rental income, not to reside in it himself. Loss of anticipated rental income is an item of damages fully compensable by monetary damages, and while projecting lost future rent does involve some speculation, it is not enough to render monetary damages sufficiently inadequate to allow specific performance. *See e.g. Heathcote Assoc. v. Chittenden Trust Co.*, 958 F.Supp. 182, 186 (D.Vt. 1997). The Plaintiff did not argue to the jury that an award of future loss of rent was appropriate, but he was not prevented from doing so, and indeed, did ask the jury to award damages for projected lost rent between the date of breach and the time of the trial. In light of the jury's $100,000 award, which is roughly the amount of money sought by Plaintiff for the lost rent, the Court finds that the jury could have fully compensated the Plaintiff for his future lost rent as well. Thus, the Plaintiff has failed to show that his available legal remedies are inadequate.

In any event, even assuming that the Plaintiff had demonstrated all of the necessary elements for specific performance, the Court would nevertheless rely on its discretionary authority to deny specific performance. While the jury found that the parties had a meeting of the minds regarding the sale on May 27, 1997, the Plaintiff's subsequent conduct indicates that, at best, the terms of the agreement were somewhat unclear, and at worst, that the Plaintiff effectively repudiated the deal by requesting terms fundamentally at odds with the agreement reached by the parties. The Plaintiff's own exhibits demonstrate that, without granting a corresponding adjustment in price, the Plaintiff sought to convert an "as is" sale into one in which the Defendants would be responsible for extensive repairs to the plumbing and heating systems, and would warrant those repairs for a period of six months after the closing. Whether this demand, which is an unusual provision in a real estate contract, was actually an inartfully drafted request related to a simple repair necessary to complete the home inspection or a major concession that the Plaintiff hoped to slip past the Defendants and their lawyer (or even a reflection of the lack of agreement in the first instance upon the "as is" nature of the sale), the Court finds that the Plaintiff's demands after May 27, 1997 are at least partially responsible for the failure of the sale to close. As the Court stated previously, the Plaintiff failed to prove performance on his part of the essential terms of the agreement, or show that he was ready, willing, and able to close the sale on the terms that were initially agreed to.

The Court in *Pecorella, supra.,* stated, "the party seeking equity must do equity, i.e., he must come into court with clean hands." 107 A.D.2d at 1064, 486 N.Y.S.2d at 563. While the Court need not make a determination of the exact degree of culpability that the Plaintiff's actions had on the ultimate collapse of the sale, the Court finds that the Plaintiff's post-agreement negotiations were a contributing factor which, in the Court's discretion, warrants the denial of specific performance.

### D. As to the notice of pendency

█ Following the Court's oral decision, the Defendants moved to vacate the

**182**

notice of pendency filed by the Plaintiff on the property in East Quogue pursuant to N.Y. C.P.L.R. § 6501. That section states "a notice of pendency may be filed in any action ... in which the judgment demanded would affect the title to, or the possession, use, or enjoyment of, real property." At this stage of the litigation, with the Plaintiff's claim for specific performance denied and only a money judgment remaining, the notice of pendency is no longer necessary or appropriate. In *Zitz v. Pereira*, 965 F.Supp. 350 (E.D.N.Y.1997), the court found that the plaintiff's notice of pendency "was to secure a source of funds" in the event that the plaintiff prevailed on a claim for money damages. "It is well established," the *Zitz* court wrote, "that an action for money damages will not entitle the plaintiff to a notice of pendency." *Id.* at 356, *see also Borrero v. East Harlem Council for Human Services*, 165 A.D.2d 807, 564 N.Y.S.2d 55 (1st Dept. 1990). Since money damages are all that remain in this case, this Court directs that the notice of pendency filed in this case be vacated.

### CONCLUSION

Therefore, for the reasons stated above, the cross-motions of the parties for summary judgment are DENIED. The Defendants' motions for judgment as a matter of law at the close of the Plaintiff's case, at the close of the evidence, and following the verdict are all DENIED. The Plaintiff's request for specific performance is DENIED.

Upon receipt of this order, the Clerk of the New York State Supreme Court, County of Suffolk, is directed to cancel the notice of pendency in Index No. 97–23334, filed on September 11, 1997.

The Clerk of this Court is directed to enter a judgment in favor of the Plaintiff against the Defendants for money damages in the amount of $100,000, with pre-judgment interest, *see* N.Y. Civ. Prac. L. & R. § 5001(a) and (b); *Trademark Research Corp. v. Maxwell Online, Inc.*, 995 F.2d

326, 342 (2d Cir.1993) (pre-judgment interest in contract case is recoverable as of right), at the New York State statutory rate of 9%, *see Schwimmer v. Allstate Ins. Co.*, 176 F.3d 648 (2d Cir.1999) (issues relating to pre-judgment interest in diversity case are to be resolved by resort to the substantive law of the forum state); N.Y. Civ. Prac. L & R § 5004. Pre-judgment interest shall be calculated from the date of July 22, 1997 to the date of the judgment.

The Clerk is further directed to close this case.

**SO ORDERED.**