Todd M. ROBERTS, Plaintiff–
Appellee–Cross-Appellant,

v.

Mahmood KARIMI and Johanna Karimi, Defendants–Appellants–
Cross–Appellees.

Nos. 00–7193(L), 00–7195(CON),
00–7197(XAP).

United States Court of Appeals,
Second Circuit.

Argued Nov. 21, 2000.

Decided May 31, 2001.

Todd M. Roberts, Roberts, Sheridan & Kotel, New York, NY, for Plaintiff–Appellee–Cross–Appellant.

Timothy J. Keane, Quirk and Bakalor, P.C., New York, NY, for Defendants–Appellants–Cross–Appellees.

Before OAKES, JACOBS, and PARKER, Circuit Judges.

JACOBS, Circuit Judge:

Defendants Mahmood Karimi and Johanna Karimi appeal from a judgment en-

tered by the United States District Court for the Eastern District of New York (Spatt, *J.*), awarding plaintiff Todd Roberts $100,000 on his claim that the Karimis breached a contract to sell him their house. Roberts cross-appeals the district court's denial of his post-trial motion for specific performance.

The district judge concluded that the writings in evidence were sufficient to withstand the statute of frauds, and the jury found that there had been a meeting of the minds. But the jury was not asked to decide whether Roberts had been ready, willing and able to perform, an element of his contract claim that was sharply contested because Roberts had objected to an "as is" term of sale on which the Karimis insisted. When an issue is omitted from a special verdict form, Rule 49(a) of the Federal Rules of Civil Procedure provides that the court "may make a finding" as to the issue. Since the district court's opinion denying specific performance included the finding that Roberts was unwilling to take the house "as is," and since that supportable finding is incompatible with the judgment on the special verdict, we reverse the judgment against the Karimis on that claim.

## BACKGROUND

### A. The Parties' Negotiations

In spring 1997, Roberts contacted Deborah Foglia, a real estate agent employed by the Karimis, to arrange for a tour of the Karimis' vacation house in East Quogue, New York. Roberts negotiated to buy the property through Foglia as intermediary. Roberts never spoke to the Karimis.

On or about May 27, 1997, Foglia recorded the terms of a putative agreement in a "Memorandum of Sale," which reflected *inter alia* that the house was sold for $610,000, subject to a cryptic contin-gency: "home inspection—termite." The Karimis did not sign this (or any other) contract, but two days later Mahmood Karimi described the sale as follows in a note to his lawyer:

Attention Mr. Munzel!

Please Note,

The house is sold *as is* and as is rented.

In the ensuing weeks, the parties began to dispute the terms of the deal, chiefly the import of the phrase "as is." On June 17, the Karimis' lawyer sent to his counterpart a standard-form real estate contract together with a draft rider specifying that the purchaser "agrees to take the premises as is," and excising certain sellers' representations in the standard-form contract, *i.e.*, representations that all mechanical and electrical systems including heating, plumbing, and air conditioning would be in working order on the date of the closing.

Roberts rejected the "as is" condition, insisted on the sellers' representations, and proposed that the form contract be modified so that the sellers' representations would survive the closing and remain enforceable for six months thereafter. Roberts eventually dropped his demand that the representations survive the closing, but he consistently refused to take the house "as is." On July 15, 1997, Roberts sent the Karimis a form of contract, executed by himself, that contained a sellers' warranty that all systems were in working order. A check for the deposit accompanied the contract. The Karimis refused to sign, and Roberts sued for breach of the putative May 27 agreement.

### B. Proceedings in the District Court

#### 1. The Karimis' Motion for Summary Judgment on the Statute of Frauds

The Karimis moved for summary judgment on the ground that any agreement

between the parties was unenforceable by virtue of the New York statute of frauds. *See* N.Y. Gen. Oblig. Law § 5–703; *Messner Vetere Berger McNamee Schmetterer Euro RSCG Inc. v. Aegis Group PLC,* 93 N.Y.2d 229, 689 N.Y.S.2d 674, 677, 711 N.E.2d 953 (1999) ("[A]n oral agreement to convey an estate or interest in real property, other than a lease for a term not exceeding one year, is nugatory and unenforceable." (internal quotations omitted)). Roberts conceded that the Karimis never signed their names to a contract, and that the May 27 "Memorandum of Sale"— signed by Foglia as the Karimis' "selling agent"—did not independently satisfy the statute of frauds because Foglia was not authorized in writing to sign on the Karimis' behalf. *See* N.Y. Gen. Oblig. Law § 5–703(2) (requiring that a writing be "subscribed by the party to be charged, *or by his lawful agent thereunto authorized by writing*" (emphasis added)).

The district court concluded, however, that the requirement of a sufficient writing was satisfied by the cumulative weight of three documents. *See Roberts v. Karimi,* 79 F.Supp.2d 174, 178 (E.D.N.Y.1999). One was the May 27 Memorandum of Sale; the second was Mahmood Karimi's note to his lawyer. The third was an affidavit executed by Mahmood Karimi on September 9, 1998, which was submitted in a (separate) suit between the Karimis and Foglia's brokerage firm, and which references the May 27, 1997 Memorandum of Sale and the "as is" condition:

> 8. A memorandum of sale was drafted by [Foglia] which stated the purchase price, a contingency regarding termites, as well as when the commission became due and owing. The property was offered for $610,000 which was less than half of the original sale price *with an "as is" condition.*

> 9. Initially, *I was agreeable to the terms outlined in the memorandum of sale.* However, the attorney for the buyer contacted my attorney and attempted to negotiate certain costly repairs *ignoring the above referenced "as is" provision.*

Joint Appendix at 159 (emphasis added); *see Roberts,* 79 F.Supp.2d at 178. Having relied on the Karimi affidavit to satisfy the statute of frauds, however, Roberts must accept what the affidavit says about the disputed feature of the transaction: that the putative May 27 agreement included an "as is" term of sale. *See R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 78 (2d Cir.1984) (holding that a writing cannot satisfy the statute of frauds if it "contradict[s] the alleged oral agreement").

## 2. The Verdict and Motions for Post–Trial Relief

The special verdict form given to the jury asked whether "there was a meeting of the minds, namely an agreement on all of the material terms of the contract," on May 27, 1997. But as to another essential element of Roberts' claim—whether Roberts "performed what he was obligated to do under the terms of the contract [and] was ready, willing and able to do all that the contract required"—the jury was not asked and did not say. The jury was directed to proceed directly to the issue of damages if it found that there had been a "meeting of the minds."

The Karimis argued to the jury that there had been no meeting of the minds because Roberts had not assented to the "as is" condition. The jury disagreed, found that minds met on May 27, and awarded Roberts $100,000 in damages.

Each side moved for post-trial relief. The Karimis argued that they were entitled to judgment notwithstanding the ver-

dict because no reasonable juror could have found a meeting of the minds. In denying the motion, Judge Spatt ruled that there was evidence sufficient to show that "the Plaintiff and the Defendants reached an agreement to sell the house on an 'as is' basis" on May 27 despite Roberts' insistence *after May 27* on different terms. *Roberts,* 79 F.Supp.2d at 179. Roberts cross-moved for specific performance. That motion was also denied, on the ground that Roberts had failed to make certain factual showings required for an award of equitable relief. *See id.* at 180–81. These cross-appeals followed.

## DISCUSSION

On appeal, the Karimis argue three grounds for reversal of the judgment:

(1) the agreement is unenforceable under the statute of frauds because (a) Mahmood Karimi's affidavit, which was generated in a subsequent litigation, cannot serve as a sufficient writing, and (b) Johanna Karimi, who is a tenant by the entirety, never signed anything evidencing an agreement to sell her interest;

(2) as a matter of law, there was insufficient proof of an enforceable agreement because (a) the extent of the sellers' warranties was a material term on which the parties did not agree on May 27, 1997, and (b) in any event they did not intend to be bound until the terms were reduced to a formal, written document, *see Ciaramella v. Reader's Digest Ass'n,* 131 F.3d 320, 322 (2d Cir.1997); and

(3) the court's adverse finding on Roberts' willingness to perform—an element of Roberts' claim as to which the jury made no finding—defeats the judgment.

We agree with the last contention, which is dispositive, and therefore do not consider the Karimis' other arguments or Roberts'

cross-appeal from the denial of specific performance.

■ As the district court explained in the jury charge, a plaintiff in a breach of contract case must prove not only that an enforceable contract existed, but also that he "performed what he was obligated to do under the terms of the contract [and] was ready, willing and able to do all that the contract required." Trial Tr. 899–900; *see BAII Banking Corp. v. UPG, Inc.,* 985 F.2d 685, 697–98 (2d Cir.1993); *Startech v. VSA Arts,* 126 F.Supp.2d 234, 236 (S.D.N.Y.2000); 2 *New York Pattern Jury Instructions—Civil* PJI 4:1 at 429 (West Supp.2001). By consent of the parties, however, this question was omitted from the special verdict form, and the jury therefore made no finding as to whether Roberts established this element of his claim.

When a jury is specially instructed, and "an issue [is] omitted" without objection, it "shall be deemed" that a finding was made "in accord with the judgment on the special verdict," *unless* the court makes a finding to the contrary. Fed. R. Civ. Pro. 49(a) ("As to an issue omitted without [objection] the court *may* make a finding; . . . .") (emphasis added); *see Sealey v. Giltner,* 197 F.3d 578, 586 (2d Cir.1999) ("[T]he omission of any issue waives the right to a jury trial on that issue and permits the court to make a finding."); *Getty Petroleum Corp. v. Island Transp. Corp.,* 878 F.2d 650, 656 (2d Cir.1989). And as it happens, *the district court did make a finding to the contrary.*

■ On Roberts' post-trial application for specific performance, Judge Spatt considered the various equitable factors, and in so doing expressly found "that [Roberts] has failed to prove that he substantially performed or that he was ready, willing, and able to perform his obligations under the May 27, 1997 agreement." *Roberts,* 79

F.Supp.2d at 181. In support of this conclusion, the court cited ample evidence that Roberts refused to proceed with the sale on an "as is" basis. *Id.; see also id.* at 179–80 (noting that Roberts "did apparently repudiate the 'as is' provision by including a clause in his proposed contract that required the plumbing and heating systems to be in working order at the time of the closing"). The court's finding is not clearly erroneous, and we accept it. *See* Fed. R. Civ. Pro. 52(a); *Therrell v. Georgia Marble Holdings Corp.,* 960 F.2d 1555, 1562–64 (11th Cir.1992). And because the documents on which Roberts relied to satisfy the statute of frauds reflect an "as is" term of sale, it follows that Roberts was unwilling to perform the only contract he could show existed.

It is possible that the district court did not fully appreciate the significance of this finding; another part of the opinion states that because the Karimis did not request a jury instruction on Roberts' willingness to perform, "the Court will not substitute its opinion for that of the jury on an issue that was not presented to them." *Roberts,* 79 F.Supp.2d at 180. Nevertheless, the court in fact arrived at an opinion on the question, and made a finding that resolved it and that is not clearly erroneous. Roberts therefore does not enjoy the Rule 49(a) presumption that a finding was made in his favor on issues omitted from the special verdict form.

Finally, Roberts cannot claim that the Karimis conceded the issue of Roberts' willingness to perform. As the trial transcript shows, the Karimis opposed telling the jury that "there is no dispute," and instead requested that the jury be told that the element is "not before you." The court (and Roberts' counsel) agreed, and the jury was told that the element was "not for your consideration."

## CONCLUSION

Since Roberts failed to prove an essential element of his breach of contract claim, the judgment on that claim is reversed. Roberts also brought a promissory estoppel claim against the Karimis, but the jury was told not to reach that claim if it found that the Karimis were liable for breach of contract. It is altogether unclear how the law of the case impacts the promissory estoppel claim, but we remand to the district court for any further proceedings that may be needed.