Toobian v Golzad (2021 NY Slip Op 02185)





Toobian v Golzad


2021 NY Slip Op 02185


Decided on April 7, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 7, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
CHERYL E. CHAMBERS
HECTOR D. LASALLE
ANGELA G. IANNACCI, JJ.


2018-02266
 (Index No. 504238/15)

[*1]Payam Toobian, respondent,
v
Mehrdad Golzad, et al., appellants.


Mintz Levin Cohn Ferris Glovsky and Popeo, P.C., New York, NY (Christopher J. Sullivan, Dominic J. Picca, Kara M. Cormier, and Alexandra G. Calistri of counsel), for appellants.
Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf & Carone, LLP, Brooklyn, NY (Mark Furman of counsel), for respondent.



DECISION & ORDER
In an action, inter alia, to impose a constructive trust, the defendants appeal from an order of the Supreme Court, Kings County (Lawrence Knipel, J.), dated January 11, 2018. The order, insofar as appealed from, denied those branches of the defendants' motion which were, in effect, for summary judgment declaring that the subject property and the defendant DBK 2102, LLC, were not held in trust for the plaintiff and for summary judgment dismissing the causes of action for the imposition of a constructive trust, and alleging breach of fiduciary duty and unjust enrichment.
ORDERED that the order is affirmed insofar as appealed from, with costs.
The plaintiff and the defendant Mehrdad Golzad (hereinafter the defendant) met in 2005 and, upon discovering their shared cultural background, language, and interests, became close friends who trusted, relied upon, and helped one another. The defendant made loans to the plaintiff in the hundreds of thousands of dollars. The plaintiff sometimes repaid those loans via payments to the defendant's creditors.
In 2009, the plaintiff, an experienced real estate investor, became aware of a commercial property in Brooklyn (hereinafter the subject property). He believed the subject property was a good investment and discussed it with the defendant. According to the plaintiff, due to the credit shortage resulting from the 2008 financial crisis and derogatory items on his credit, he sought the defendant's help, proposing that the defendant purchase and hold the subject property and thereafter convey it to the plaintiff when the latter was able to obtain credit. This agreement was not memorialized in writing. According to the defendant, there was no agreement. Instead, the defendant contends that the plaintiff simply recommended to the defendant that he purchase the subject property as a means of producing income for the defendant's disabled son. The plaintiff promised to help the defendant manage the subject property, as the defendant had little real estate experience.
According to the plaintiff, he contributed approximately $1.5 million toward the purchase of the subject property, albeit partly in the form of loans extended by the defendant. The defendant, in contrast, contends that he made no such loans and that the plaintiff's cash contributions were for the purpose of repaying unrelated prior loans.
In April 2010, the defendant purchased and financed the subject property and held legal title to it via the defendant BK 2102, LLC (hereinafter the LLC), of which he was the sole member. The defendant also obtained and personally guaranteed a mortgage loan of $2.8 million for the subject property. From the time of purchase until mid-2014, the plaintiff performed the majority of the management tasks for the subject property, including evicting a nonpaying tenant and re-letting that unit.
In early 2014, the plaintiff obtained financing for the subject property in his own name. While the plaintiff expected the defendant to convey the subject property and the LLC membership to him pursuant to the oral agreement, the defendant declined to do so, denying having made any promise to hold either the property or the LLC for the plaintiff's benefit. According to the defendant, he was the sole owner of both the subject property and the LLC and the plaintiff had no financial interest in either entity.
In April 2015, the plaintiff commenced this action against the defendant and the LLC seeking, inter alia, a judgment declaring that the subject property and the LLC were held in trust for him, and imposing a constructive trust upon the subject property. The defendants moved, in effect, for summary judgment declaring that the subject property and the LLC were not held in trust for the plaintiff, for summary judgment dismissing the remaining causes of action, and on their third counterclaim.
The Supreme Court, inter alia, found triable issues of fact as to whether the plaintiff could establish part performance to defeat the defendants' statute of frauds defense. The court further found triable issues of fact regarding whether there was a breach of fiduciary duty warranting imposition of a constructive trust. Accordingly, the court denied those branches of the defendant's motion which were for summary judgment dismissing the causes of action alleging breach of fiduciary duty, unjust enrichment, to impose a constructive trust on the subject property and the LLC, and, in effect, for summary judgment declaring that the subject property and the LLC were held in trust for the plaintiff. The defendant appeals.
"'The statute of frauds prohibits the conveyance of real property without a written contract'" (Gendler v Guendler, 174 AD3d 507, 509, quoting Pinkava v Yurkiw, 64 AD3d 690, 692; see General Obligations Law § 5-703[3]). However, "'[n]othing contained in [General Obligations Law § 5-703] abridges the powers of courts of equity to compel the specific performance of agreements in cases of part performance'" (Korman v Corbett, 183 AD3d 608, 610, quoting General Obligations Law § 5-703[4]; see Zito v County of Suffolk, 106 AD3d 814, 815). Thus, "the statute of frauds is not a defense to a properly pleaded cause of action to impose a constructive trust on real property" (Ubriaco v Martino, 36 AD3d 793, 794).
A party who relies on the part performance exception must demonstrate that his or her actions are "unequivocally referable" to the oral agreement which he or she seeks to establish (see Messner Vetere Berger McNamee Schmetterer Euro RSCG v Aegis Group, 93 NY2d 229, 235; Weiss v Halperin, 149 AD3d 1143, 1145; Barretti v Detore, 95 AD3d 803, 806). "'Unequivocally referable' conduct is conduct which is inconsistent with any other explanation" (Barretti v Detore, 95 AD3d at 806 [internal quotation marks omitted]). "It is insufficient that the oral agreement gives significance to plaintiff's actions. Rather, the actions alone must be unintelligible or at least extraordinary, explainable only with reference to the oral agreement" (Gendler v Guendler, 174 AD3d at 509 [internal quotation marks omitted]; see Anostario v Vicinanzo, 59 NY2d 662, 664). "Significantly, the doctrine of part performance 'is based on principles of equity, in particular, recognition of the fact that the purpose of the Statute of Frauds is to prevent frauds, not to enable a party to perpetrate a fraud by using the statute as a sword rather than a shield'" (Pinkava v Yurkiw, 64 AD3d at 692, quoting Nicolaides v Nicolaides, 173 AD2d 448, 450).
Here, while the plaintiff's work in negotiating the purchase of the subject property and in managing it might be susceptible to other explanations, his contribution of approximately $1.5 million toward its purchase, albeit partially in the form of loans from the defendant, would be "unintelligible or at least extraordinary" without reference to the alleged oral agreement (Gendler v Guendler, 174 AD3d at 509 [internal quotation marks omitted]). Accordingly, the Supreme Court properly determined that although the defendant demonstrated, prima facie, that the alleged oral [*2]agreement was barred by the statute of frauds, the plaintiff raised a triable issue of fact regarding part performance.
In addition, since the statute of frauds is not a defense to a cause of action to impose a constructive trust on real property (see Mackenzie v Croce, 54 AD3d 825, 827), the Supreme Court properly found that a triable issue of fact exists as to whether a constructive trust should be imposed under the circumstances of this case. "'A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee'" (Ubriaco v Martino, 36 AD3d at 794, quoting Beatty v Guggenheim Exploration Co., 225 NY 380, 386). The four factors to be considered in ascertaining whether the imposition of a constructive trust is warranted are the existence of a fiduciary or confidential relationship, a promise, a transfer in reliance thereon, and unjust enrichment (see Delidimitropoulos v Karantinidis, 186 AD3d 1489, 1490; Ubriaco v Martino, 36 AD3d at 794). However, since it is an equitable remedy, a constructive trust is "necessarily flexible to accomplish its purpose" (Counihan v Allstate Ins. Co., 194 F3d 357, 361 [2d Cir]). Therefore, these factors are guidelines, not inflexible elements (see Delidimitropoulos v Karantinidis, 186 AD3d at 1490-1491; Galasso, Langione & Botter, LLP v Galasso, 176 AD3d 1176, 1184; Hernandez v Florian, 173 AD3d 1144, 1145).
"A fiduciary relationship arises between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation. Put differently, [a] fiduciary relation exists when confidence is reposed on one side and there is resulting superiority and influence on the other" (Roni LLC v Arfa, 18 NY3d 846, 848 [internal quotation marks omitted]; see Oddo Asset Mgt. v Barclays Bank PLC, 19 NY3d 584, 592-593). "A fiduciary relationship is 'necessarily fact-specific' and is also 'grounded in a higher level of trust than normally present in the marketplace between those involved in arm's length business transactions'" (Oddo Asset Mgt. v Barclays Bank PLC, 19 NY3d at 593, quoting EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19; see Roni LLC v Arfa, 74 AD3d 442, 444, affd 18 NY3d 846).
Here, the transaction between the plaintiff and the defendant was not arm's length but rather took place in the context of a friendship characterized not only by shared interests, cultural affiliations, and personal trust, but also by reliance on one another in business matters, including loans in the hundreds of thousands of dollars. While any single factor might not be sufficient, by itself, to establish a fiduciary relationship (see Castellotti v Free, 138 AD3d 198, 209; Shaffer v Gilberg, 125 AD3d 632, 635; Roni LLC v Arfa, 74 AD3d at 444; Bontecou v Goldman, 103 AD2d 732, 733), viewed collectively, they demonstrate that triable issues of fact exist regarding the existence of a fiduciary relationship between the plaintiff and the defendant, whether the defendant was unjustly enriched and whether, under the circumstances, a constructive trust should be imposed on the subject property and the LLC.
The defendants contend that, even if the plaintiff overcomes the statute of frauds bar, the oral agreement is still unenforceable. Indeed, "'[w]here a contract's material terms are not reasonably definite, the contract is unenforceable'" (443 Jefferson Holdings, LLC v Sosa, 174 AD3d 486, 487, quoting Matter of Licata, 76 AD3d 1076, 1077). "However, while a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable, the terms of a contract [do not] need [to] be fixed with absolute certainty to give rise to an enforceable agreement" (Kolchins v Evolution Mkts., Inc., 31 NY3d 100, 106-107 [internal quotation marks omitted]). In assessing whether the terms of an alleged agreement are sufficiently definite, "courts look to the basic elements of the offer and the acceptance to determine whether there is an objective meeting of the minds sufficient to give rise to a binding enforceable contract" (26th St. Partners, LLC v Federation of Orgs. for the N.Y. State Mentally Disabled, Inc., 182 AD3d 543, 543 [internal quotation marks omitted]).
Contrary to the defendants' contention, the terms of the agreement as described by the plaintiff and as evidenced by the parties' actions are not fatally indefinite. The "doctrine of definiteness" (Cobble Hill Nursing Home v Henry & Warren Corp., 74 NY2d 475, 482) should not be "applied with a heavy hand" (id. at 483) or allowed to "defeat the reasonable expectations of the parties in entering into the contract" (id.). Here, the terms of the agreement are supported by the [*3]parties' "expressed words and deeds" (26th St. Partners, LLC v Federation of Orgs. for the N.Y. State Mentally Disabled, Inc., 182 AD3d at 544 [internal quotation marks omitted]). Specifically, the plaintiff identified the subject property and introduced the defendant to people who helped facilitate the defendant's purchase of the property, including financing. The defendant, in turn, deferred to the plaintiff in decisions regarding the transaction. Notably, the plaintiff chose the lawyer who represented the purchaser LLC at closing, and the defendant allowed the plaintiff to manage the subject property's income and expenses, including paying the mortgage from the rents, notwithstanding the defendant's complaints about his reliability in doing so. The parties' deeds, therefore, support the terms of the agreement as described by the plaintiff.
Finally, the defendants' contention that the alleged oral agreement fails for lack of consideration is without merit. "[A]n illusory contract—that is, '[a]n agreement in which one party gives as consideration a promise that is so insubstantial as to impose no obligation'—is 'unenforceable'" (Lend Lease [US] Constr. LMB Inc. v Zurich Am. Ins. Co., 28 NY3d 675, 684, quoting Black's Law Dictionary 370 [9th ed 2009]; see Beitner v Becker, 34 AD3d 406, 407). "Consideration consists of either a benefit to the promisor or a detriment to the promisee. It is enough that something is promised, done, forborne, or suffered by the party to whom the promise is made as consideration for the promise made to him [or her]" (Nassau County v New York State Urban Dev. Corp., 157 AD3d 805, 807 [internal quotation marks omitted]). "Legally sufficient consideration does not necessarily entail a benefit flowing to the promisor" (Weston v Smith, 38 AD3d 1224, 1224-1225); instead, "[a] 'promisee who has incurred a specific, bargained for legal detriment may enforce a promise against the promisor, notwithstanding the fact that the latter may have realized no concrete benefit as a result of the bargain'" (id. at 1225, quoting Holt v Feigenbaum, 52 NY2d 291, 299; see Weiner v McGraw—Hill, Inc., 57 NY2d 458, 464). Indeed, "[t]he detriment suffered or the thing promised need not benefit the promisee or a third party, or be of substantial value to anyone" (Nassau County v New York State Urban Dev. Corp., 157 AD3d at 807-808).
Here, the plaintiff proffered evidence that, in exchange for the defendant acting as his agent and nominee in the purchase of the subject property, the plaintiff promised to manage the subject property and pay its expenses. Assuming that the property was, in fact, purchased on the plaintiff's behalf, that promise has, as the defendant notes, little or no value to him since the defendant would not benefit from the plaintiff's management of a property in which the defendant had no equitable interest. Nevertheless, the plaintiff's promise to manage the property and pay its expenses was "a specific, bargained for legal detriment" irrespective of its value to the defendant (Weston v Smith, 38 AD3d at 1225 [internal quotation marks omitted]). Accordingly, the alleged oral agreement does not fail for lack of consideration.
As the plaintiff raised triable issues of fact regarding the existence of an enforceable agreement and whether a constructive trust was an appropriate remedy in light of the strictures imposed upon that agreement by the statute of frauds, the Supreme Court properly denied those branches of the defendants' motion which were for summary judgment dismissing those causes of action.
The defendants' remaining contentions are improperly raised for the first time on appeal.
DILLON, J.P., CHAMBERS, LASALLE and IANNACCI, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court